# EXHIBIT A

**Sort by date:** Descending Ascending          **Display options:** All Entries ⌄

**06/03/2026**

Notice of Service

Acknowledgment of Service and Email Correspondence from Plaintiff

**Corporation Served**

Document ID - 26-SMCC-483; Served To - BETTER MORTGAGE CORPORATION; Served Date - 06/02/2026; Served Time - 11:54:00; Service Type - SP; Reason Description - SERV; Service Text -

**05/26/2026**

**Summons Issued-Circuit**

Document ID: 26-SMCC-483, for BETTER MORTGAGE CORPORATION; Emailed to Plaintiff

**Correspondence Filed**

   **Filed By:** WILLIAM WILSON

**Order - Special Process Server**

**Motion Special Process Server**

   **Filed By:** WILLIAM WILSON

**Amended Motion/Petition Filed**

   **Filed By:** WILLIAM WILSON

**05/21/2026**

**Corporation Served**

Document ID - 26-SMCC-436; Served To - BETTER MORTGAGE CORPORATION; Served Date - 05/15/2026; Served Time - 08:30:00; Service Type - SD; Reason Description - SERV; Service Text -

**05/20/2026**

**Notice of Service**

Summons Served to Better Mortgage Corporation

**05/06/2026**

**Judge Assigned**

**Summons Issued-Circuit**

Document ID: 26-SMCC-436, for BETTER MORTGAGE CORPORATION Money Order 22-126870802

**Confid Filing Info Sheet Filed**

**Pet Filed in Circuit Ct**



# Summons in Civil Case

IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

| Judge or Division: | Case Number: 26SF-CC00101 | |
|---|---|---|
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address | |
| Defendant/Respondent:<br> BETTER MORTGAGE<br>CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO  63640 | (Date File<br>Stamp for<br>Return) |
| Nature of Suit:<br>CC Other Tort | | |

**The State of Missouri to:**

**R/A: CT CORPORATION SYSTEM 5661 TELEGRAPH RD STE 4B ST. LOUIS, MO  63129**

**BETTER MORTGAGE CORPORATION**
 1 WORLD TRADE CENTER 80TH FLOOR
 NEW YORK, NEW YORK 10007

**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

*COURT SEAL OF*



*ST. FRANCOIS COUNTY*

| 06-MAY-2026 | /s/Kristina Bone by: Jennifer Webb |
|---|---|
| Date | Clerk |

**Further Information:**

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-436**
1 of 2 (26SF-CC00101)                              Civil Procedure Form No. 1, SCR 54.01 – 54.05,
54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

**Case Number: 26SF-CC00101**

### Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)

in _____ (County/City of St. Louis), MO, on _____ (date)

at _____ (time).

_____        _____
Printed Name of Officer or Server                              Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*        My commission expires: _____ _____
                                                    Date                              Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

WILLIAM WILSON &      )
SARAH WILSON,        )
PO Box 227,          )
Farmington, Missouri 63640,   )
                     )
Plaintiffs,          )
                     )
v.                   )
                     )
                     )
BETTER MORTGAGE CORPORATION,  )
1 World Trade Center, 80th Floor,   )
New York, New York 10007,   )
Registered Agent for Service:   )
C T CORPORATION SYSTEM,   )
5661 Telegraph Road, Suite 4B,   )
Saint Louis, Missouri 63129-4275,   )
                     )
Defendant.           )

**FILED**

MAY 0 6 2026

KRISTINA BONE, CIRCUIT CLERK
ST. FRANCOIS COUNTY, MO

Case No. 26SF-CC00101
Division: _____

TRIAL BY JURY DEMANDED

**PETITION FOR DAMAGES AND JURY DEMAND**

Plaintiffs William Donald Wilson and Sarah Wilson, appearing pro se, file this Petition for Damages and Jury Demand against Defendant Better Mortgage Corporation ("Better") and state as follows:

**I. INTRODUCTORY STATEMENT**

1. This action arises from Better's handling of an FHA purchase mortgage for a new-build residence located at 1239 Stono Mountain Drive, Farmington, St. Francois County, Missouri 63640.

2. The transaction involved Better Loan No. 1649285704, FHA/VA Case No. 292-8445580, seller/builder Honey Bee Holdings LLC, and Preferred Land Title, LLC of Farmington, Missouri as settlement agent.

3. Better accepted and processed William's loan application beginning on or about February 2, 2026, issued written loan disclosures and authorizations, issued a written mortgage commitment, obtained an FHA appraisal, issued multiple Loan Estimates and Closing Disclosures, communicated clear-to-close, and allowed closing to be scheduled.

4. Better had written authority from the start to verify employment, income, credit, assets, property, and other transaction information. Better's own forms authorized verification before closing and as part of quality control.

Page 1 of 14

5. Better's February 17, 2026 written commitment stated that the commitment was binding on both parties and identified conditions Better had to manage before closing, including sufficient assets for closing, verbal verification of employment within ten days of closing, soft credit review, title, appraisal, fraud review, and pre-closing quality-control review.

6. Despite that authority and those identified conditions, Better advanced the file into closing reliance, communicated clear-to-close on March 17, 2026, allowed closing to be scheduled on March 18, 2026, and then used last-minute employment verification and vague, unexplained underwriting positions to collapse the transaction.

7. Better later generated an adverse-action notice stating only 'UnverifiableInformation.' That one-word explanation did not identify what information Better claimed was unverifiable, when Better first knew of the issue, what underwriting standard was applied, whether BD&J income was evaluated as an alternative path, or whether the problem involved DLG, Humanity HR, reserves, 401(k) documentation, credit, Factual Data, FHA/TOTAL findings, Better overlays, fraud review, pre-closing quality control, or some combination of issues.

8. Better's conduct caused foreseeable and substantial damages, including loss of the home transaction, escrow and title complications, threatened seller litigation, moving and storage costs, employment deterioration, loss of income, loss of health-insurance stability, disability-related consequences, housing instability, and severe emotional distress.

## II. PARTIES, JURISDICTION, VENUE, SERVICE, AND STATE-LAW PLEADING

9. Plaintiff William Donald Wilson is an individual residing in Farmington, St. Francois County, Missouri, with mailing address PO Box 227, Farmington, Missouri 63640.

10. Plaintiff Sarah Wilson is William's spouse, affected household member, signatory to FHA amendatory and real-estate certification documents, and direct participant in the household relocation and purchase transaction. To the extent Better's own records identified Sarah as a co-borrower or transaction participant, Better's internal treatment of Sarah is within Better's possession and is preserved for discovery.

11. Defendant Better Mortgage Corporation is a mortgage lender and residential mortgage company that conducted mortgage-origination business in Missouri and processed the subject FHA mortgage loan for Missouri residential property.

12. Better identified itself in loan documents as Better Mortgage Corporation, NMLS No. 330511, Missouri license/NMLS No. 330511, with principal address at 1 World Trade Center, 80th Floor, New York, New York 10007.

13. Better identified its loan originator as Ashley Rayne Gould-Martinez or Ashley Gould-Martinez, NMLS No. 1943523, email ashleym@better.com, telephone 646-791-1783.

14. Better may be served through its registered agent in Missouri: C T Corporation System, 5661 Telegraph Road, Suite 4B, Saint Louis, Missouri 63129-4275.

15. This Court has personal jurisdiction over Better because Better transacted business in Missouri, held itself out as licensed for Missouri mortgage lending, processed a Missouri residential mortgage loan, issued Missouri loan disclosures, communicated with Missouri title and closing participants, and caused foreseeable injury in Missouri.

16. Venue is proper in St. Francois County because the property, closing, settlement agent, escrow consequences, transaction, and substantial events giving rise to the claims occurred in, were directed to, or affected St. Francois County, Missouri.

17. This Court has subject-matter jurisdiction over this civil action. Plaintiffs seek damages exceeding Twenty-Five Thousand Dollars for jurisdictional purposes. Plaintiffs do not plead a specific total dollar demand in the prayer for relief.

18. Plaintiffs intentionally plead only Missouri common-law and Missouri statutory claims. References to FHA, federal disclosure forms, consumer-reporting language, adverse-action language, or federal lending documents are pleaded as transaction facts, evidence of Better's conduct, and background for Missouri state-law claims, not as independent federal causes of action.

### III. GENERAL FACTUAL ALLEGATIONS

19. On or about February 2, 2026, William applied for a Better FHA purchase loan for the property located at 1239 Stono Mountain Drive, Farmington, Missouri 63640.

20. The seller/builder was Honey Bee Holdings LLC. The title company and settlement agent was Preferred Land Title, LLC of Farmington, Missouri. Better's Closing Disclosures identified Preferred Land Title, LLC and file number F2512108.

21. The purchase price was $410,000. Better's FHA appraisal later valued the property at $423,000, above the contract price.

22. The FHA Amendatory Clause and Real Estate Certification were signed by William and Sarah on February 13, 2026 and by the seller on February 16, 2026. The FHA amendatory valuation condition required an appraised value of not less than $410,000, which Better's appraisal satisfied.

23. Better's appraisal identified the property as a new-condition residence and reported no physical deficiencies or adverse conditions affecting livability, soundness, or structural integrity.

24. William disclosed employment and income information to Better, including W-2 employment with DLG and BD&J. DLG was William's primary employer.

25. Beginning on or about February 1, 2026, William began working for DLG remotely in connection with his move from California to Missouri.

26. DLG was a small firm with approximately fifteen employees. William later learned that DLG or its third-party HR provider, Humanity HR, had treated or coded him as terminated because he had moved from California to Missouri and DLG was not then properly set up for W-2 remote employees in Missouri.

27. William did not know of the DLG/Humanity HR coding issue before Better's last-minute verification activity.

28. William also worked for BD&J as a settlement negotiator. William maintains that Better could or should have evaluated whether the loan could proceed using BD&J income alone or through another lawful, accurate, and timely income analysis after the DLG issue became known.

29. William listed his 401(k) funds as an asset, but he did not intend to use 401(k) funds for closing.

30. Better's loan officer told William, in substance, that if he did not intend to use the 401(k) funds for the transaction, he did not need to provide documentation for that asset.

31. Around March 1, 2026, Better asserted that William needed approximately $8,400 to $8,500 in reserves to qualify for the loan.

32. Better did not, at any time before its later demand for approximately $8,400 to $8,500 in reserves, clearly identify, mention, disclose, or explain that Plaintiffs were required to prove any separate reserve amount as a condition of loan approval, underwriting qualification, clear-to-close, or closing. Better's prior disclosures and communications addressed cash to close, down payment, closing costs, escrow items, asset documentation, and general sufficient-assets-for-closing language, but did not reasonably inform Plaintiffs that Better was imposing an additional reserve requirement on top of the funds already required for down payment, escrow, closing costs, and settlement, including the approximately $14,112 later reflected as deposited or escrowed.

33. To the extent Better contends that generic references to assets, closing funds, or additional documentation disclosed the reserve requirement, Plaintiffs deny that such language clearly or reasonably disclosed a separate reserve requirement of approximately $8,400 to $8,500, and Better failed to explain whether the alleged reserve requirement came from FHA, FHA TOTAL Scorecard, manual underwriting, credit policy, investor guidelines, a Better overlay, compensating-factor analysis, or some other underwriting basis.

34. Better then rejected or refused to accept the 401(k) screenshots or documentation William had available, despite the loan officer's earlier guidance that 401(k) documentation would not be necessary if those funds were not being used to close.

35. William was forced to scramble to create approximately $8,500 in liquid or semi-liquid reserves on top of funds already placed into escrow for the transaction.

36. The transaction had a $10,000 earnest-money deposit and approximately $14,112 in escrow for down payment and closing costs.

37. Better's Loan Estimates and Closing Disclosures disclosed cash-to-close figures but did not clearly disclose the alleged reserve requirement as a separate qualification condition when Better's documents and communications were inducing continued reliance.

## IV. WRITTEN COMMITMENT, DISCLOSURES, AND CLOSING-READINESS CONDUCT

38. On February 17, 2026, Better issued a Mortgage Written Commitment Letter for the subject property and loan.

39. The commitment letter identified a purchase loan, FHA insured loan type, a principal loan amount of $395,650, a 360-month term, a fixed interest rate of 5.875%, monthly mortgage-insurance payment of $161.10, and a commitment expiration date of March 16, 2026.

40. The commitment letter stated: 'This commitment agreement is binding on both parties.'

41. The commitment letter also stated that if the mortgage loan was not closed within the commitment period, for any reason, the mortgage lender would no longer be obligated by the commitment agreement and any commitment fees paid would be refunded to the borrower.

42. Better's later conduct after March 16, 2026, including continued disclosures, clear-to-close communication, revised Closing Disclosures, and closing scheduling, constituted an extension, reaffirmation, waiver, modification, replacement promise, or independent representation of closing readiness. Alternatively, Better breached or mishandled the loan by failing to complete and sequence required conditions before the commitment period expired.

43. The commitment letter identified conditions including clear title documents, confirmation of gift funds or sufficient assets for closing, verbal verification of employment within ten days of closing, a soft credit pull within ten days of closing, activated homeowner's insurance, satisfactory appraisal, underwriter review of a third-party fraud report, pre-closing quality-control review, and possible additional credit, income, and asset documentation.

44. Better therefore knew, by its own written commitment, that employment verification, sufficient assets, fraud review, credit review, appraisal, title, insurance, and pre-closing quality control were conditions Better had to manage before final closing reliance.

45. On February 24, 2026, Better issued a Loan Estimate showing a $410,000 sale price, $402,573 loan amount, 5.875% interest rate, estimated closing costs of $16,972, estimated cash to close of $14,398, and a rate lock expiring March 16, 2026 at 5:00 p.m. EDT.

46. On February 25, 2026, Better issued a revised Loan Estimate changing the interest rate to 6.75%, estimated closing costs to $7,957, estimated cash to close to $5,383, and lender credits to $8,075.

47. On February 26, 2026, Better issued another Loan Estimate showing the interest rate at 6.75%, estimated closing costs of $6,925, estimated cash to close of $4,351, and lender credits of $9,107.

48. On March 2, 2026, Better issued another Loan Estimate showing the interest rate at 6.75%, estimated closing costs of $6,685, estimated cash to close of $4,111, and lender credits of $9,107.

49. On March 10, 2026, Better issued a Closing Disclosure identifying a March 13, 2026 closing date, Preferred Land Title, LLC as settlement agent, file number F2512108, an FHA loan, a $402,573 loan amount, a 6.75% interest rate, closing costs of $6,579.69, and cash to close of $3,245.44.

50. On March 18, 2026, Better issued a revised Closing Disclosure identifying a March 20, 2026 closing date, Preferred Land Title, LLC as settlement agent, a $402,573 FHA loan, a 6.625% interest rate, closing costs of $7,867.51, cash to close of $413.85, and a deposit of $14,112.

51. The March 18 Closing Disclosure stated that the interest rate changed to 6.625%, pricing changed, the lender credit was updated to $7,275.65, and monthly mortgage insurance was updated to $180.44.

52. On March 31, 2026, Better issued another Closing Disclosure identifying a closing date of April 1, 2026, disbursement date of April 6, 2026, Preferred Land Title, LLC as settlement agent, a $402,573 FHA loan, a 6.625% rate, closing costs of $10,243.93, cash to close of $2,791.32, and funds wired from borrower of $4,112.

53. By issuing repeated Closing Disclosures and coordinating with Preferred Land Title, Better caused Plaintiffs, the seller, and title to reasonably understand that the file was in active closing status and that remaining issues, if any, were ordinary closing mechanics rather than unresolved transaction-ending underwriting defects.

## V. CLEAR-TO-CLOSE, LAST-MINUTE EMPLOYMENT VERIFICATION, AND COLLAPSE OF THE TRANSACTION

54. The contractual closing deadline was amended to March 19, 2026.

55. On March 17, 2026, Better's loan officer, Ashley, communicated to William that the loan had received clear-to-close.

56. On March 18, 2026, Better provided a mechanism for scheduling the closing, and closing was scheduled for March 19, 2026 at 9:00 a.m.

57. At or near that same time, Better had already received or had access to employment-related information, including a letter on company letterhead stating William remained employed and would continue to be employed, along with a recent pay stub.

58. Better nevertheless refused to allow the transaction to close without last-minute verbal confirmation of employment from DLG.

59. At the time Better insisted on verbal employment confirmation, DLG's owner and administrator were involved in a civil trial and had limited availability outside ordinary office hours.

60. Better's last-minute insistence on verbal confirmation, after clear-to-close and closing scheduling, created an immediate closing crisis.

61. Because Better would not allow the transaction to close without verbal confirmation, William was forced to take a defensive posture with DLG and threaten legal action relating to wrongful classification, employment coding, and failure to verify employment, in an effort to preserve the closing Better had represented as ready.

62. Those urgent communications and threats materially contributed to deterioration of William's relationship with DLG.

63. DLG ultimately decided it was best to part ways with William.

64. William's annual salary through DLG was approximately $125,000 plus uncapped bonus potential. In 2025, William was awarded approximately $30,000 in performance bonuses, making his annual pay for 2025 approximately $155,000.

65. William's additional employment with BD&J was also affected. Due to the severe stress, the deterioration of his primary employment, and the mental-health strain caused by the transaction collapse, William sought disability leave.

66. William did not meet the tenure requirements for FMLA leave, and his depression affected his work performance. BD&J then decided to part ways with him.

67. William's combined base employment income from DLG and BD&J was approximately $213,000 annually, exclusive of performance bonuses and other benefits.

68. Better denied or withdrew the loan and later issued an adverse-action notice generated April 1, 2026.

69. The adverse-action notice stated only 'UnverifiableInformation' as the reason Better could not approve the loan request.

70. The same notice stated that Better's credit decision was based in whole or in part on information obtained from Factual Data, listed a credit score of 593, and identified a February 3, 2026 credit-pull date.

71. A separate Better credit-score disclosure in the file listed an Equifax score of 624 dated February 11, 2026.

72. Better's unexplained denial reason did not identify the specific information Better claimed was unverifiable, the source of the unverifiable information, the underwriting standard applied, whether William's BD&J income was evaluated as an alternative path, whether the reason was DLG employment status, a W-2 to 1099 classification issue, reserve documentation, 401(k) documentation, credit, Factual Data, FHA/TOTAL findings, Better overlays, fraud review, pre-closing quality control, or some combination of these matters.

73. After Plaintiffs attempted to escalate the matter pre-suit, Better did not provide a substantive legal, compliance, or executive response. Instead, a Better customer advocate, Louis Mastro, responded that a final credit decision had been made and communicated and that there was no new information available for Better to provide.

## VI. DAMAGES AND FORESEEABLE CONSEQUENCES

74. As a direct and foreseeable result of Better's conduct, Plaintiffs lost the opportunity to close on the $410,000 new-build home at 1239 Stono Mountain Drive, a property that had appraised at $423,000.

75. Honey Bee Holdings LLC has threatened legal action arising from the failed transaction.

76. Preferred Land Title, LLC has indicated that it may file, or may need to file, an interpleader concerning escrowed funds.

77. Plaintiffs have approximately $14,112 in escrow or deposited funds tied to the transaction and face loss, delay, legal expense, or uncertainty related to those funds.

78. Plaintiffs incurred appraisal, inspection, transaction, and related out-of-pocket costs, including costs presently estimated at approximately $1,250, subject to proof and supplementation.

79. Plaintiffs incurred additional moving and storage costs presently estimated at approximately $8,750, subject to proof and supplementation.

80. Plaintiffs face the possibility of loss, damage, or forced disposition of personal property, furniture, clothing, household goods, and personal effects with an estimated value that may exceed $80,000, subject to proof and supplementation.

81. William lost or was caused to lose primary employment income, secondary employment income, bonus potential, employment benefits, and health-insurance stability.

82. Plaintiffs allege lost base wages of at least approximately $213,000 annually, exclusive of bonus potential, benefits, insurance value, and other employment-related damages.

83. William lost health insurance through DLG and was unable to maintain comparable coverage because COBRA coverage was approximately $2,900 per month.

84. Plaintiffs became housing insecure and have experienced homelessness or the immediate threat of homelessness.

85. William has Bipolar I disorder. Better's conduct foreseeably caused severe stress, severe depression, disability-related consequences, and aggravation of a preexisting mental-health condition.

86. Plaintiffs have suffered economic loss, consequential loss, loss of household stability, severe emotional distress, medical and mental-health consequences, legal exposure, and other damages to be proven at trial.

87. Where allegations concern Better's internal underwriting systems, decisioning, conditions, quality-control review, communications, vendor information, employment-verification records, or closing status, Plaintiffs plead upon information and belief because those facts are uniquely within Better's possession and control.

## VII. CLAIMS FOR RELIEF

### COUNT I
### BREACH OF WRITTEN MORTGAGE COMMITMENT AND RELATED LOAN AGREEMENTS
### (WILLIAM AGAINST BETTER; SARAH TO THE EXTENT DISCOVERY SHOWS CONTRACTUAL OR THIRD-PARTY BENEFICIARY RIGHTS)

88. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

89. Better issued a written mortgage commitment and related loan documents for the subject FHA purchase loan.

90. The commitment stated that it was binding on both parties and identified the conditions Better was required to administer before closing.

91. William performed, substantially performed, tendered performance, or was ready, willing, and able to perform all material obligations required of him, except to the extent Better's own conduct prevented, delayed, frustrated, or excused further performance.

92. Better breached the written commitment and related loan obligations by failing to administer identified conditions in a timely and commercially reasonable manner, failing to sequence verification and closing readiness before inducing reliance, failing to close after clear-to-close and scheduling, and denying or withdrawing the loan on a vague and unexplained basis after the transaction reached final closing posture.

93. To the extent Better contends the commitment expired on March 16, 2026, Better's later conduct - including continued disclosures, clear-to-close communication, revised Closing Disclosures, and closing scheduling - constituted a waiver, extension, modification,

reaffirmation, replacement agreement, or independent representation that Better would proceed with the closing if ordinary closing conditions were satisfied.

94. Plaintiffs were damaged as a direct and foreseeable result of Better's breach.

## COUNT II
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### (PLAINTIFFS AGAINST BETTER)

95. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

96. Better possessed contractual or transaction-based discretion over underwriting conditions, documentation requests, employment verification, reserve analysis, fraud review, pre-closing quality control, and closing coordination.

97. Better had a duty to exercise that discretion in good faith and in a manner consistent with the reasonable expectations created by its written commitment, disclosures, clear-to-close communication, and closing schedule.

98. Better breached that duty by using conditions it controlled or had weeks to manage as a last-minute basis to collapse the transaction after inducing Plaintiffs, the seller, and title to rely on the loan being ready to close.

99. Better further breached the implied covenant by failing to timely disclose the separate reserve requirement, reversing asset-documentation guidance, failing to clearly explain the underwriting basis for reserves, failing to timely control employment verification, and refusing to give a meaningful explanation for the final denial.

100. Plaintiffs were damaged as a direct and foreseeable result.

## COUNT III
## NEGLIGENT MISREPRESENTATION
### (PLAINTIFFS AGAINST BETTER)

101. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

102. Better, in the course of its mortgage business and for its own pecuniary interest, supplied information to Plaintiffs concerning loan approval, clear-to-close status, closing readiness, reserve requirements, 401(k) documentation, cash to close, employment verification, and the ability to proceed to closing.

103. Better's loan officer represented, in substance, that William did not need to document 401(k) funds if those funds were not being used for closing.

104. Better later represented, through its loan officer, disclosures, closing workflow, and scheduling process, that the loan was clear-to-close and that closing could be scheduled.

105. Those representations were material because Plaintiffs were relying on Better to determine whether the purchase loan could close and whether Plaintiffs should continue making financial, housing, employment, and logistical decisions in reliance on closing.

106. The representations were false, incomplete, or misleading if Better had not actually completed or controlled material underwriting conditions, including separate reserves, employment verification, fraud review, quality control, and alternative income analysis.

107. Better failed to exercise ordinary care in communicating and controlling the information supplied to Plaintiffs.

108. Plaintiffs reasonably relied on Better's representations and omissions.

109. Plaintiffs suffered pecuniary loss and other damages as a direct and foreseeable result.

## COUNT IV
## FRAUDULENT, RECKLESS, OR CONSTRUCTIVE MISREPRESENTATION AND OMISSION
## (PLAINTIFFS AGAINST BETTER)

110. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

111. This Count is pleaded under Missouri law and is based on Better's representations and omissions in the mortgage transaction.

112. Better represented through Ashley and its closing workflow that the loan had received clear-to-close and that closing could be scheduled for March 19, 2026.

113. Better omitted that material underwriting conditions remained unresolved, unstable, or capable of defeating the loan after clear-to-close and closing scheduling, including the late verbal employment verification issue, separate reserve issue, and any internal fraud review, quality-control, overlay, or alternative-income analysis issue that Better later used or relied upon to deny or withdraw the loan.

114. Better knew, or in the exercise of ordinary business care necessarily should have known, whether those material conditions remained unresolved before communicating clear-to-close and scheduling the closing.

115. To the extent Better communicated clear-to-close while knowing or consciously disregarding unresolved transaction-ending conditions, Better's conduct was reckless, misleading, and calculated to induce reliance.

116. Plaintiffs relied on Better's representations and omissions because Better was the lender, controlled underwriting and closing readiness, and held itself out as having determined the loan could proceed to closing.

117. Plaintiffs were damaged as a direct and foreseeable result.

118. Plaintiffs do not plead punitive damages in this initial Petition. Plaintiffs reserve the right to seek leave to amend to add punitive damages if discovery establishes the required statutory and evidentiary basis.

## COUNT V
## PROMISSORY ESTOPPEL AND DETRIMENTAL RELIANCE
## (PLAINTIFFS AGAINST BETTER)

119. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

120. Better made promises or representations that the loan was committed, actively proceeding, clear-to-close, and ready for scheduled closing.

121. Better should reasonably have expected Plaintiffs to rely on those promises and representations by maintaining the purchase contract, placing funds in escrow, arranging moving and storage, preparing for closing, communicating with employers and title, and organizing their household around the closing.

122. Plaintiffs did in fact rely on Better's promises and representations.

123. That reliance was reasonable under the circumstances because Better controlled the underwriting, verification, closing disclosures, and clear-to-close status.

124. Injustice can be avoided only by enforcing Better's promises or by awarding damages sufficient to compensate Plaintiffs for reliance, consequential losses, and related harm.

## COUNT VI
## NEGLIGENT UNDERTAKING AND MORTGAGE-PROCESSING NEGLIGENCE
### (PLAINTIFFS AGAINST BETTER)

125. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

126. Better undertook to originate, process, underwrite, verify, disclose, approve, and close a Missouri FHA residential purchase mortgage for Plaintiffs' household transaction.

127. Once Better undertook those services, Better owed a duty to use reasonable care in processing the loan, communicating material conditions, verifying employment and assets, coordinating with title, sequencing underwriting conditions, and avoiding clear-to-close representations unless material conditions were sufficiently controlled.

128. Better breached that duty by failing to timely identify and disclose the reserve issue, reversing guidance on 401(k) documentation, failing to explain the underwriting basis for reserves, issuing or communicating clear-to-close before final conditions were controlled, insisting on last-minute verbal employment confirmation under circumstances Better knew or should have known could collapse the transaction, failing to evaluate or explain the BD&J income path, and issuing a vague unexplained denial reason.

129. Better's breaches were a direct and proximate cause of Plaintiffs' damages.

130. Plaintiffs plead this Count in the alternative to contractual claims and based on duties arising from Better's undertaking, mortgage-business conduct, Missouri consumer-protection standards, Missouri mortgage-lending regulatory standards, and Better's control over information and closing readiness.

## COUNT VII
## MISSOURI MERCHANDISING PRACTICES ACT
### (RSMO SECTIONS 407.020 AND 407.025)
### (PLAINTIFFS AGAINST BETTER)

131. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

132. Better sold, offered, and performed mortgage-origination and loan-processing services in connection with a residential purchase transaction for personal, family, or household purposes.

133. Plaintiffs were reasonable consumers in relying on Better's written commitment, Loan Estimates, Closing Disclosures, clear-to-close communication, closing schedule, and loan officer communications.

134. Better used or employed deception, false promise, misrepresentation, unfair practice, concealment, suppression, or omission of material facts in connection with its mortgage services by, among other things, failing to timely disclose the separate reserve requirement, giving inconsistent 401(k) documentation guidance, advancing the file into closing reliance, communicating clear-to-close, scheduling closing, and then collapsing the transaction based on unresolved or unexplained conditions.

135. Better's conduct would cause a reasonable consumer to enter into, continue, or rely upon the mortgage transaction and closing process.

136. Plaintiffs suffered an ascertainable and objectively calculable loss of money or property, including escrow exposure, appraisal and inspection costs, moving and storage costs, transaction costs, lost housing opportunity, seller-claim exposure, employment-related losses, and other damages proven by documents and testimony.

137. Better's conduct occurred before, during, and after the sale and performance of mortgage-origination services.

138. Plaintiffs' claim is directed to Better's mortgage-origination and loan-processing services, not to Honey Bee Holdings LLC's sale of the new residence.

139. Plaintiffs are entitled to actual damages, equitable relief, costs, attorney's fees if applicable, and all other remedies available under Missouri law. Plaintiffs reserve any request for punitive damages until after leave of court is sought and granted under Missouri law.

## COUNT VIII
## TORTIOUS INTERFERENCE WITH CONTRACT AND BUSINESS EXPECTANCY
## (PLAINTIFFS AGAINST BETTER)

140. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

141. Plaintiffs had a valid purchase contract and economic expectancy concerning the acquisition of the Farmington property.

142. Better knew of that contract and expectancy because Better was the lender processing the purchase loan, issuing disclosures, and coordinating with the title company for closing.

143. Plaintiffs also had an existing employment relationship and economic expectancy with DLG, and Better knew or should have known that last-minute employment verification pressure could affect the employment relationship because Better insisted on urgent verbal employment confirmation as a condition of closing.

144. Better intentionally or improperly interfered with Plaintiffs' contract and expectancies by advancing the file to clear-to-close and scheduled closing while failing to timely control the underwriting conditions that Better later used to collapse the transaction, thereby forcing urgent employment conflict and preventing the purchase from closing.

145. Better's interference was without justification or was accomplished through improper means, including misleading closing-readiness communications, late-disclosed reserve and verification demands, inconsistent processing, and vague denial reasoning.

146. Plaintiffs suffered damages as a direct and foreseeable result.

## COUNT IX
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS AND AGGRAVATION OF PREEXISTING CONDITION
## (PLAINTIFFS AGAINST BETTER)

147. Plaintiffs incorporate the preceding paragraphs as if fully set forth herein.

148. Better should have realized that its conduct involved an unreasonable risk of causing emotional distress because Better was handling a home-purchase closing, escrow funds, moving logistics, employment verification, housing stability, and financial reliance for Plaintiffs' household.

149. Better should have realized that the distress, if caused, might result in illness, bodily harm, disability-related consequences, or aggravation of a preexisting condition.

150. William has Bipolar I disorder and experienced severe debilitating depression, disability-related consequences, loss of employment stability, and loss of health-insurance stability after the collapse of the transaction and employment deterioration.

151. Plaintiffs' emotional distress was medically significant, severe, and directly connected to the transaction collapse, housing instability, employment loss, and financial consequences caused or contributed to by Better's conduct.

152. Plaintiffs suffered damages as a direct and foreseeable result.

## VIII. RESERVATION REGARDING PUNITIVE DAMAGES

153. Plaintiffs do not include a punitive-damages claim in this initial Petition.

154. Plaintiffs expressly reserve the right to seek leave of Court to add punitive damages if discovery establishes that Better intentionally, knowingly, recklessly, or with conscious disregard engaged in conduct warranting punitive damages under Missouri law.

## IX. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs William Donald Wilson and Sarah Wilson respectfully request that the Court enter judgment in their favor and against Defendant Better Mortgage Corporation, and award:

A. Actual damages in an amount to be determined by the jury and permitted by Missouri law;

B. Consequential damages, including transaction losses, escrow-related losses or exposure, moving and storage costs, loss of housing opportunity, seller-claim exposure, employment-related losses, insurance-related losses, medical and mental-health related losses, and all other damages proven at trial;

C. Prejudgment interest and post-judgment interest as allowed by law;

D. Costs of court;

E. Attorney fees to the extent permitted by statute, contract, equity, or other applicable Missouri law;

F. Equitable relief as appropriate, including relief concerning escrow/title consequences if supported by the evidence;

G. Leave to seek punitive damages at the appropriate time if permitted by Missouri law and supported by discovery; and

H. Such other and further relief as the Court deems just and proper.

## X. JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

## XI. REQUEST FOR ISSUANCE OF SUMMONS

Plaintiffs request that the Clerk issue summons for Defendant Better Mortgage Corporation through its registered agent, C T Corporation System, 5661 Telegraph Road, Suite 4B, Saint Louis, Missouri 63129-4275.

Respectfully submitted,

William Donald Wilson, Plaintiff Pro Se
PO Box 227
Farmington, Missouri 63640
Telephone: 573-315-5902
Email: Wilwilson1217@outlook.com

Sarah Wilson, Plaintiff Pro Se
PO Box 227
Farmington, Missouri 63640
Telephone: 573-315-5902
Email: Swilson121722@gmail.com

IN THE TWENTY-FOURTH JUDICIAL CIRCUIT OF MISSOURI

ORDER ASSIGNING JUDGE

IN THE MATTER OF:

WILLIAM WILSON
VS
BETTER MORTGAGE
CORPORATION

Case Number   26SF-CC00101

NOW ON THIS   6th   day of   May   , 20 26 ,

the undersigned, as Presiding Judge of the Twenty-fourth Judicial Circuit, pursuant

to the powers granted by statute and local court rules, does assign the above-

styled cause to the Honorable   Brice Sechrest

IT IS FURTHER ORDERED that the judge assigned hereby shall have all

Powers and responsibilities for this cause as assigned by operation of law and

the same shall continue until final disposition of the above-styled matter. The

clerk is ordered to notify said Judge and counsel of this appointment.

_____
BRICE SECHREST
PRESIDING JUDGE
24TH JUDICIAL CIRCUIT

Order Assigning Judge - 2026

Electronically Filed - ST. FRANCOIS - May 20, 2026 - 08:59 AM



# Summons in Civil Case

**ORIGINAL RETURN**

RETURN SB 6-5

## IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

| Judge or Division: | Case Number: 26SF-CC00101 | |
|---|---|---|
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address | |
| Defendant/Respondent:<br>BETTER MORTGAGE CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO  63640 | |
| Nature of Suit:<br>CC Other Tort | | (Date File Stamp for Return) |

The State of Missouri to: 30 CTCOR S.W.

R/A: CT CORPORATION SYSTEM 5661 TELEGRAPH RD STE 4B ST. LOUIS, MO  63129

**BETTER MORTGAGE CORPORATION**

1 WORLD TRADE CENTER 80TH FLOOR
NEW YORK, NEW YORK 10007

Other Addresses:

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**COURT SEAL OF**

**ST. FRANCOIS COUNTY**

06-MAY-2026
Date

/s/Kristina Bone by: Jennifer Webb
Clerk

2026 MAY 12 AM 11: 26
ST. LOUIS COUNTY SHERIFF'S OFFICE
RECEIVED

Further Information:

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-436**
1 of 2 (26SF-CC00101)

Civil Procedure Form No. 1, SCR 54.01 – 54.05, 54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo

5-13-24

Electronically Filed - ST. FRANCOIS - May 20, 2026 - 08:59 AM

Case Number: 26SF-CC00101

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the

defendant/respondent with _____, a person at least 18 years

of age residing therein.

☑ (for service on a corporation) delivering a copy of the summons and petition to:

_____ *Pan* _____ (name) *Intake Specialist* (title).

☑ other: _____ *CT Corp* _____.

Served at *5661 Telegraph Rd, Suite 413, 63129* (address)

in _____ *St Louis* _____ (County/City of St. Louis), MO, on *05-15-2026* (date)

at *8:30* (time).

_____ *KEVIN MEHTA* _____          _____ *(signature)* _____
Printed Name of Officer or Server                 Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____  _____
                          Date                          Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

# Summons in Civil Case

## IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRICE R SECHREST | Case Number: 26SF-CC00101 |
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address |
| Defendant/Respondent:<br> BETTER MORTGAGE<br>CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO  63640 |
| Nature of Suit:<br>CC Other Tort | (Date File Stamp for Return) |

**The State of Missouri to:**        **BETTER MORTGAGE CORPORATION**
**Alias:**
**R/A: CT CORPORATION SYSTEM**        **1 WORLD TRADE CENTER 80TH FLOOR**
**5661 TELEGRAPH RD STE 4B**        **NEW YORK, NEW YORK 10007**
**ST. LOUIS, MO  63129**
**Other Addresses:**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**COURT SEAL OF**



**ST. FRANCOIS COUNTY**

| | |
|---|---|
| 26-MAY-2026 | /s/ Kristina Bone By: Amber Ashley |
| Date | Clerk |

**Further Information:**

**Case Number: 26SF-CC00101**

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the defendant/respondent with _____, a person at least 18 years of age residing therein.

☐ (for service on a corporation) delivering a copy of the summons and petition to:

_____ (name) _____ (title).

☐ other: _____.

Served at _____ (address)
in _____ (County/City of St. Louis), MO, on _____ (date)
at _____ (time).

_____       _____
        Printed Name of Officer or Server                                Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**
Subscribed and sworn to before me on _____ (date).

*(Seal)*

My commission expires: _____ _____
                                                Date                                    Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

| | | |
|---|---|---|
| WILLIAM WILSON and<br>SARAH WILSON,<br>P.O. Box 227<br>Farmington, Missouri 63640 | )<br>)<br>)<br>)<br>) | Case No. 26SF-CC00101<br><br>Division: _____ |
| Plaintiffs, | )<br>) | Nature of Cause: Contract /<br>Other Tort — Lender Liability, |
| v. | )<br>) | Fraud, Negligent<br>Misrepresentation, Missouri |
| BETTER MORTGAGE CORPORATION,<br>1 World Trade Center, 80th Floor<br>New York, New York 10007 | )<br>)<br>)<br>) | Merchandising Practices Act,<br>Tortious Interference,<br>Negligent Infliction of<br>Emotional Distress, Breach of |
| Serve Registered Agent:<br>C T CORPORATION SYSTEM<br>5661 Telegraph Road, Suite 4B<br>Saint Louis, Missouri 63129 | )<br>)<br>)<br>) | Implied Covenant of Good Faith,<br>and Promissory Estoppel<br><br>TRIAL BY JURY DEMANDED |
| Defendant. | )<br>) | |

FILED
05/26/2026
Kristina Bone
CLERK, CIRCUIT COURT
ST FRANCOIS COUNTY

## **FIRST AMENDED PETITION FOR DAMAGES AND JURY DEMAND**

## **(Filed as of Right Pursuant to Missouri Rule of Civil Procedure 55.33(a))**

COME NOW Plaintiffs William Wilson and Sarah Wilson, appearing pro se, and for

their First Amended Petition for Damages against Defendant Better Mortgage Corporation, state

and allege as follows:

PRELIMINARY STATEMENT. Plaintiffs file this First Amended Petition as a matter of

right pursuant to Missouri Supreme Court Rule 55.33(a), no responsive pleading having yet been

filed by Defendant. Pursuant to Missouri Supreme Court Rule 55.25(c), Defendant's deadline to

serve a responsive pleading to this First Amended Petition is the later of (a) Defendant's existing

answer deadline of June 15, 2026, or (b) ten (10) days after service of this First Amended

Petition upon Defendant through its Missouri registered agent, C T Corporation System,

whichever period is longer. Plaintiffs reserve all rights to enforce Defendant's response deadline

as calculated under Rule 55.25(c) and to seek default judgment if Defendant fails timely to respond.

## I. INTRODUCTION

1. This action arises from Defendant Better Mortgage Corporation's ("Better" or "Defendant") wrongful refusal to fund a written, binding FHA mortgage loan commitment that it had issued to the Plaintiffs on February 17, 2026, in connection with what would have been Plaintiffs' first home purchase. In reliance upon Better's binding written commitment, Plaintiffs vacated their rented residence in Palmdale, California, contracted with an interstate moving carrier to relocate their entire household more than 1,800 miles to St. Francois County, Missouri, wired cash-to-close, and stood ready, willing, and able to close on the purchase of the Property located at 1239 Stono Mountain Drive, Farmington, Missouri 63640 (the "Property").

2. Better, after locking the loan, issuing a written Mortgage Commitment Letter expressly stating that the commitment was "binding upon both parties," collecting fees from Plaintiffs, allowing Plaintiffs to incur tens of thousands of dollars of detrimental-reliance expenses, and repeatedly representing through its licensed loan officer that closing was imminent — and on March 17, 2026 expressly representing through its loan officer that the loan was "clear to close" — simultaneously and contradictorily informed the settlement agent on the very same day that the loan was NOT clear to close. Better thereafter failed and refused to fund the loan, manufactured pretextual underwriting objections (including a fabricated "Klarna" balance), and finally issued a written Adverse-Action Notice whose only stated reason was the single word "UnverifiableInformation" — a reason so devoid of specific information that it independently violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9.

3. Better's conduct was not a mere underwriting decision. It was a course of conduct that combined breach of a binding written loan commitment, breach of the implied covenant of good faith and fair dealing, intentional and reckless misrepresentations of present fact made to induce Plaintiffs' reliance, negligent misrepresentations by an entity that had assumed a duty of care to provide accurate information, unfair and deceptive practices "in connection with" the sale of a loan within the meaning of the Missouri Merchandising Practices Act, RSMo § 407.020, tortious interference with the Plaintiffs' separate real-estate purchase contract with a third-party seller, and the foreseeable infliction of severe emotional distress upon an eggshell plaintiff with a medically diagnosed and disclosed preexisting bipolar disorder.

4. As a direct and proximate result, Plaintiffs and their infant daughter E.G.W. (born April 12, 2025) were thrown into housing crisis; Plaintiffs lost the benefit of their $410,000 purchase contract on a Property independently appraised at $423,000 (representing a minimum of $13,000 in day-one equity); Plaintiffs incurred substantial out-of-pocket expense, lost personal property, and irreplaceable family heirlooms; and Plaintiff William Wilson, a person with a preexisting bipolar diagnosis well-known and disclosed during the loan process, suffered an aggravation of his condition diagnosable and medically significant within the meaning of Bass v. Nooney Co., 646 S.W.2d 765 (Mo. banc 1983), and a foreseeable aggravation of a preexisting condition compensable under Widener v. St. Louis Public Service Co., 230 S.W.2d 698 (Mo. 1950).

## II. PARTIES, JURISDICTION AND VENUE

5. Plaintiff William Wilson is currently an adult resident of St. Francois County, Missouri, with mailing address Post Office Box 227, Farmington, Missouri 63640. At the time Plaintiffs applied to Better for the FHA purchase-money mortgage loan that is the subject of this

action, and at all relevant times through and including February 27, 2026, Plaintiff William Wilson resided at a rented single-family residence located in Palmdale, California. Plaintiff William Wilson physically relocated from Palmdale, California to St. Francois County, Missouri on or about February 27, 2026, in direct reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close.

6. Plaintiff Sarah Wilson is currently an adult resident of St. Francois County, Missouri, with the same mailing address. Plaintiffs are husband and wife. At the time Plaintiffs applied to Better for the FHA purchase-money mortgage loan that is the subject of this action, and at all relevant times through and including February 27, 2026, Plaintiff Sarah Wilson also resided at the same rented single-family residence in Palmdale, California, together with Plaintiff William Wilson and Plaintiffs' infant daughter, E.G.W., born April 12, 2025. Plaintiff Sarah Wilson physically relocated from Palmdale, California to St. Francois County, Missouri on or about February 27, 2026, in direct reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close. At all relevant times, Plaintiffs intended to acquire and to occupy the Property as their personal, family, and household residence within the meaning of RSMo § 407.025.1, and Better was so informed.

7. Defendant Better Mortgage Corporation is a Delaware corporation with its principal place of business at 1 World Trade Center, 80th Floor, New York, New York 10007. Better is licensed under the laws of the State of Missouri as a mortgage broker / mortgage lender under Missouri Mortgage Broker License No. 330511 and NMLS Identifier No. 330511. Better may be served through its Missouri registered agent, C T Corporation System, 5661 Telegraph Road,

Suite 4B, Saint Louis, Missouri 63129-4275. Better was served with original process in this action on May 15, 2026.

8. This Court has subject-matter jurisdiction under Article V, § 14 of the Missouri Constitution, as this is a civil action at law between private parties, the amount in controversy exceeds the jurisdictional minimum of $25,000.00, and all causes of action arise under Missouri statutory and common law.

9. This Court has personal jurisdiction over Better because Better purposefully directed its mortgage-lending activities into Missouri. Specifically, Better: (a) solicited and accepted a loan application from Plaintiffs for the purpose of financing the purchase of Missouri real property; (b) issued a binding written Mortgage Commitment Letter on February 17, 2026 obligating itself to fund a loan secured by Missouri real property; (c) ordered and obtained an appraisal of Missouri real property; (d) was to disburse loan proceeds in Missouri and to record a deed of trust in the real-property records of St. Francois County, Missouri; (e) directed numerous communications by telephone, email, and text to and through a Missouri-based settlement agent and a Missouri-based closing transaction; (f) communicated directly with Plaintiffs by telephone, email, and text in Missouri following Plaintiffs' physical relocation on or about February 27, 2026 and continuing through and after the collapse of the closing; and (g) is licensed under the laws of the State of Missouri and transacts a regular and continuous mortgage-lending business in Missouri. RSMo § 506.500.

10. Venue is proper in St. Francois County, Missouri, under RSMo § 508.010 because Plaintiffs were first injured in St. Francois County, the real property that is the subject of the loan commitment lies in St. Francois County, the closing was to occur in St. Francois County, and a

substantial part of the events and omissions giving rise to the claims occurred in St. Francois County.

### III. COMMON FACTUAL ALLEGATIONS

**A. Pre-Application: California-to-Missouri Relocation and Plaintiff's Health Status**

11. In late 2025 and early 2026, while still residing in a rented single-family residence in Palmdale, California, Plaintiffs planned a relocation from California to St. Francois County, Missouri so that Plaintiffs and their infant daughter could be closer to extended family and so that the household could realize a meaningfully lower cost of living. Plaintiffs disclosed both their then-current California residence and their intended Missouri relocation to Better at and throughout the loan-application process, and Better at all relevant times knew that Plaintiffs were applying for an FHA purchase-money loan to acquire Missouri real property to which Plaintiffs would relocate from California in direct reliance upon Better's financing. At all times material to this action, Plaintiff William Wilson was continuously employed; he had been employed with DLG since November 2024 in a position he continued to hold uninterrupted through and after the events alleged below. In connection with the planned Missouri move, Plaintiff William Wilson's DLG employment transitioned to a fully remote arrangement effective February 1, 2026 — a change in work location, not a change in employer or in employment status. Plaintiff William Wilson initially performed that remote work from his then-current California residence and, beginning on or about February 27, 2026, continued performing the same remote work for the same employer from St. Francois County, Missouri after Plaintiffs' physical relocation. At all relevant times prior to and during the loan-application process, Plaintiff William Wilson was diagnosed with and treated for bipolar disorder, a condition known to Better through information

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

voluntarily disclosed during the loan-application process and in subsequent communications with Better's loan officer.

12. Plaintiff William Wilson's primary income at all relevant times was his continuous W-2 employment with DLG. Effective February 1, 2026 — at the same time his DLG employment transitioned to a fully remote arrangement — Plaintiff additionally undertook secondary, remote-only employment as a settlement negotiator for an entity hereinafter referred to as "BD&J," representing an increase in, not a disruption of, Plaintiff's income. At all relevant times Plaintiff William Wilson's compensation, employer-of-record, and W-2 status remained continuous and unchanged. Plaintiff's compensation arrangement and his employer's payroll-administration vendor, however, are facts material to the pretextual "unverifiable employment" objections that Better later raised, as set forth more particularly below.

13. In January 2026, Plaintiffs contacted Better and inquired about an FHA purchase mortgage to finance the purchase of a single-family residence in St. Francois County, Missouri. Better assigned Loan Officer Ashley Rayne Gould-Martinez, NMLS #1943523 ("Ashley"), as the licensed mortgage loan originator responsible for the file. Ashley was at all relevant times an employee, agent, and/or apparent agent of Better, acting within the course and scope of her employment and with actual and apparent authority to make the representations and commitments hereinafter described.

**B. The Pre-Approval, Rate Lock, and Mortgage Commitment**

14. On or about February 1–2, 2026, Plaintiffs applied to Better for a FHA purchase mortgage loan in connection with the proposed acquisition of the Property. Better assigned Loan No. 1649285704 and FHA Case No. 292-8445580 to the file.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

15. On or about February 2, 2026, Better issued a written Pre-Approval Letter to Plaintiffs.

16. On or about February 4, 2026, Ashley telephoned Plaintiff William Wilson to discuss a rate lock.

17. On or about February 12, 2026, Plaintiffs locked their loan rate with Better.

18. On or about February 13, 2026, Plaintiffs signed an FHA Amendatory Clause and Real Estate Certification. The seller, Honey Bee Holdings LLC ("Seller"), countersigned on or about February 16, 2026.

19. On or about February 17, 2026, Better issued to Plaintiffs a written Mortgage Commitment Letter (the "Commitment"). The Commitment expressly stated that, upon Plaintiffs' acceptance, it was "binding on both parties." The Commitment identified the conditions that Better — not Plaintiffs — was required to manage prior to closing, including but not limited to (a) verification of sufficient assets, (b) verbal verification of employment within ten (10) days of closing, (c) soft credit review, (d) title, (e) appraisal, (f) fraud review, and (g) pre-closing quality-control review. Plaintiffs accepted the Commitment.

20. On February 25, 2026, Plaintiff William Wilson, having received and reviewed Better's then-current Loan Estimate, sent Ashley a written email observing that the Loan Estimate reflected approximately $15,000 of cash required at closing in addition to the $10,000 in earnest money that Plaintiffs had already paid to the title company. Ashley promptly telephoned Plaintiff William Wilson in response to that email. In the ensuing telephone conversation:

(a) Plaintiff William Wilson and Ashley discussed restructuring the transaction by applying lender credits in order to reduce the cash required at closing.

(b) The conversation concluded with Ashley confirming that Plaintiffs' cash to close would be set at exactly 3.5% of the purchase price — the minimum FHA-required down payment — and no more.

(c) Plaintiff William Wilson reiterated, for the second time during the loan process, that he did not wish to use his 401(k) funds as part of the transaction.

(d) Ashley responded that Plaintiff could "ignore" the 401(k) verification task that had appeared on his Better loan portal, and that she would "override" or "delete" that task from the portal herself.

(e) Ashley further affirmatively represented to Plaintiff William Wilson, in substance and in direct words, that Better had "already verified enough assets and income" on the file, and that Plaintiff should "not worry about it."

(f) At no point during the February 25, 2026 conversation did Ashley state, suggest, or otherwise disclose that any cash-reserve requirement existed on the file or that Plaintiff's 401(k) funds (or any other source) would be needed to satisfy any such requirement.

21. In reliance on Better's binding written Commitment, on Better's representations of February 25, 2026, and on Better's repeated indications that closing could occur on or before the scheduled closing date of March 13, 2026, Plaintiffs, on or about February 27, 2026:

(a) caused their household goods to be loaded and transported from California to Missouri; (b) physically relocated themselves and their family from California to Missouri; (c) wired cash-to-close of $4,112.00 to the settlement agent; and (d) thereby committed themselves to taking possession of the Property at closing.

### C. Better's First Reversal: The Manufactured $8,500 "Reserve Requirement" of March 9, 2026

22. On or about March 9, 2026 — only four (4) days before the scheduled March 13, 2026 closing — Ashley reversed her February 25, 2026 representations and informed Plaintiff William Wilson that an $8,500 "reserve requirement" had now been imposed on the file and that Plaintiff's 401(k) funds would be required to satisfy the requirement. When Plaintiff William Wilson reminded Ashley of her February 25, 2026 statements that no reserves were required and that the 401(k) task could be ignored, and asked why a reserve requirement had not been raised earlier when closing was four days away, Ashley's only explanation was that "all FHA loans require reserves" — a statement that is false as a categorical matter of FHA underwriting.

23. Plaintiff William Wilson, in continued reliance on Better's Commitment, complied by submitting a 401(k) account screenshot. The Better underwriter rejected the screenshot, demanding additional documentation that Plaintiff could not produce on the compressed timetable Better itself had created. Plaintiff William Wilson then substituted, as proof of liquid assets, a Social Security Disability Insurance client receivable consisting of a signed retainer agreement, a billing invoice, and a contemporaneous bank deposit corroborating the receivable.

### D. The March 10–11, 2026 Title and "Klarna" Pretexts

24. On or about March 10, 2026, Better processor Philip Chan informed Plaintiff William Wilson that the title work for the Property had been "ordered, not received," and that closing therefore could not proceed. Plaintiff William Wilson immediately contacted Lisa Campbell, the closer at Preferred Land Title, LLC (Preferred Land Title File No. F2512108). Lisa Campbell confirmed that the title work had been sent to Better weeks earlier, forwarded the title commitment again, and reported that she had been unable to reach anyone at Better to confirm

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

closing numbers. Plaintiff William Wilson re-uploaded the title work to the Better borrower portal.

25. On or about March 11, 2026, Better, on what it characterized as a "re-review" of Plaintiff's bank statements, generated three (3) separate borrower-portal verification tasks directed at three small, ordinary one-time debit-card purchases from Plaintiff William Wilson's Chase account ending in 5021. Each task was generated using Better's identical template language and asserted, on its face, that each transaction was a "large or recurring payment" requiring verification. The three transactions identified, verbatim from Better's portal tasks, were: (i) "$52.4 made from your Chase account 5021 on 2/9/2026 to Klarna"; (ii) "$40 made from your Chase account 5021 on 1/26/2026 to Klarna"; and (iii) "$15.54 made from your Chase account 5021 on 2/18/2026 to Klarna." In each task, Better demanded that Plaintiff William Wilson "upload any document that shows what the payment is and how often it's being paid — recent account statements, loan agreements, and promissory notes are some common examples." None of the three transactions was "large": the amounts were $52.40, $40.00, and $15.54. None of the three transactions was "recurring": the three entries reflected three different amounts on three different dates spanning three different statement cycles, with no pattern of periodicity, no common amount, and no characteristics consistent with a recurring obligation. Better's template characterization of these de minimis, non-recurring debit-card entries as "large or recurring" payments requiring loan-agreement or promissory-note documentation was, on the face of Better's own task language, demonstrably false.

25A. Plaintiff William Wilson promptly submitted a verified letter of explanation to Better, stating, in substance and verbatim in pertinent part: that Klarna transactions appearing on his Chase account reflected either (a) use of his Klarna Flex card or (b) use of Klarna's express-

checkout option through certain online merchants or digital-wallet platforms such as Apple Pay; that in both situations he used Klarna for "paid-in-full purchases, with the full purchase amount charged to my linked Chase debit card rather than carried as a traditional installment balance"; that although he was approved for Klarna's split-pay feature for amounts up to $100, he "do[es] not use that feature"; that his "Klarna documentation confirms that my current balance due to Klarna is $0"; that because Klarna, the merchant, and Chase "may reflect different transaction, authorization, and posting dates, a Klarna debit appearing on my Chase statement may not always match a Klarna statement on an exact one-to-one date or description basis"; and that "where Klarna is used through express checkout, the transaction will appear only on my Chase statement as the debit to my linked account." Plaintiff William Wilson supplied Better with the documentation Klarna itself provides to its customers, which confirmed a zero balance and confirmed the paid-in-full character of each of the three transactions Better had flagged.

25B. Notwithstanding receipt of Plaintiff William Wilson's verified letter of explanation and supporting Klarna documentation — which conclusively established that each of the three flagged transactions was an ordinary paid-in-full purchase, that no installment obligation existed, and that the current Klarna balance was $0 — Better did not withdraw, clear, or close its "Klarna" objection. As a foreseeable result of Better's manufactured and persistently maintained "Klarna" objection, the March 13, 2026 closing did not proceed. The Seller refused to extend and issued a written "close-or-release" notice.

26. On or about March 13, 2026, Better processor Philip Chan emailed Preferred Land Title and represented that the file was not clear to close because "buyer has outstanding tasks." Plaintiff had no outstanding tasks; the file was paused solely because Better was conducting underwriting review based on its own manufactured "Klarna" pretext.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

***E. March 17, 2026 — The Smoking-Gun Day: Better's Simultaneous, Contradictory External Communications***

27. On the afternoon of March 17, 2026, and before 2:23 p.m. Eastern Time, Ashley sent a text message to Plaintiff William Wilson stating, verbatim, "Got the clear to close!!!!" Plaintiff William Wilson, reasonably relying on the representation by Better's licensed loan officer, promptly telephoned the settlement agent Lisa Campbell of Preferred Land Title and communicated to her, in substance, that Better's loan officer had advised that the loan was clear to close.

28. At 2:23 p.m. Eastern Time on March 17, 2026 — after Better's loan officer Ashley had already represented to the Plaintiff borrower that the loan was clear to close, and after Plaintiff William Wilson had relayed that representation to the settlement agent — Hasnat Sapui, a member of Better's closing department, sent an email to Lisa Campbell of Preferred Land Title stating, verbatim:

"No it is not clear to close and also verification employment pending"

This statement by Better's own closing-department employee was directly and irreconcilably inconsistent with the "clear to close" representation that Better's loan officer Ashley had already made to the Plaintiff borrower earlier the same afternoon.

29. At 3:13 p.m. Eastern Time on March 17, 2026, Lisa Campbell, in reasonable reliance on the borrower-relayed representation that Better's loan officer had said "clear to close," responded to Hasnat Sapui as follows:

"the buyer called me and said we now have clear to close. I have revised my cd and put tomorrow's date as closing"

30. At 3:45 p.m. Eastern Time on March 17, 2026, Lisa Campbell sent an additional confirmation email acknowledging receipt of further information from Better.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

31. Better's left hand (loan officer Ashley, communicating with the borrower) and Better's right hand (closing-department employee Hasnat Sapui, communicating with the settlement agent) were issuing directly contradictory representations externally to two different parties to the same closing on the same day. At the moment Better's closer was telling the settlement agent the loan was NOT clear to close, Better's loan officer had already told the borrower that it WAS clear to close, and the settlement agent had already begun preparing revised closing documents based on the borrower-relayed misrepresentation.

### F. The March 18, 2026 Closing Collapse

32. At 3:05 p.m. Eastern Time on March 18, 2026, Hasnat Sapui emailed: "Docs will be shared when VOE is completed." At 4:38 p.m. Eastern Time the same day, Hasnat Sapui emailed: "Working on revised CD." On or about the evening of March 18, 2026, Better's borrower portal showed that the final underwriting/approval task had been completed, and a new task to schedule closing had appeared. Plaintiff William Wilson, still relying on Better's affirmative representation that the loan was clear to close, rescheduled closing to March 19, 2026 at 9:00 a.m.

33. On March 19, 2026, the closing did not occur. Better did not fund. Better did not appear. Better did not produce signed loan documents. Better never thereafter funded the loan.

### G. The Defective Adverse-Action Notice

34. On or about April 1, 2026, Better issued to Plaintiffs a written Adverse-Action Notice. The only stated reason for adverse action was the single, undifferentiated word: "UnverifiableInformation."

35. Under the Equal Credit Opportunity Act, 15 U.S.C. § 1691(d)(2)–(3), and Regulation B, 12 C.F.R. § 1002.9, a creditor taking adverse action is required to provide specific reasons for

adverse action. A creditor's reason that has no concrete factual basis subverts the notification purpose of ECOA. Sayers v. General Motors Acceptance Corp., 522 F. Supp. 835, 839 (W.D. Mo. 1981).

36. Better's stated reason, "UnverifiableInformation," is generic, conclusory, and indistinguishable from no reason at all. As pleaded above, Better had previously taken inconsistent positions on the same underwriting facts: Ashley had told the borrower that 401(k) and reserves were unnecessary; that the loan was clear to close; that employment had been verified. Hasnat Sapui had simultaneously told the settlement agent the opposite. The "UnverifiableInformation" rationale was a pretextual cover for Better's own internal contradiction and unwillingness to fund a loan it had bindingly committed to.

### H. The Sellers, the Purchase Contract, and Better's Knowledge

37. At all times material hereto, Plaintiffs were parties to a binding written real-estate purchase contract with Seller Honey Bee Holdings LLC for the purchase of the Property at the price of $410,000.00. Better knew of the existence and material terms of that contract, including the closing date, the cash-to-close requirement, and the conditions of seller cooperation. Better received and reviewed the executed purchase contract as a routine part of its underwriting; Better was the lender identified on the FHA Amendatory Clause and Real Estate Certification countersigned by the Seller on February 16, 2026.

38. On or about March 5, 2026, the FHA appraisal of the Property was completed by an FHA-approved appraiser. The appraised value of the Property was $423,000.00 — approximately $13,000.00 above the contract price of $410,000.00 — representing at minimum $13,000.00 in day-one equity that the Plaintiffs would have realized upon funding of the loan and closing of the purchase.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

### I. The Wilsons' Post-Collapse Position

39. Following the collapse of closing, Plaintiffs were displaced. Their household goods had already been transported to Missouri by Plymouth Van Lines, an interstate moving carrier with whom Plaintiffs had contracted in reliance upon Better's binding written commitment to fund the loan. Plaintiffs could not occupy the Property because the closing had not funded. The Seller refused to extend and pursued or threatened pursuit of the Plaintiffs' earnest money and additional remedies. Plaintiffs were forced into temporary, more expensive housing, with associated moving and storage costs. Plaintiff William Wilson's housing stability, household income stability, and health-insurance continuity were each materially disrupted as a direct consequence of the loss of the planned move-in. Plaintiff William Wilson's preexisting bipolar disorder was significantly and medically aggravated.

39A. Plymouth Van Lines tendered first availability for delivery of Plaintiffs' household goods on March 13, 2026. Because the closing on the Property had collapsed and Plaintiffs had no funded residence in which to accept delivery, Plymouth Van Lines was required to retain Plaintiffs' entire household, including all furniture, personal property, and irreplaceable family heirlooms, in storage commencing March 13, 2026, at a recurring storage charge of $950.00 per month. Plaintiffs' contract with Plymouth Van Lines, and the resulting recurring storage obligation, was entered into in direct and reasonably foreseeable reliance upon Better's binding written Mortgage Commitment Letter of February 17, 2026 and Better's repeated subsequent representations that the loan was clear to close.

39B. On May 15, 2026, Plymouth Van Lines issued to Plaintiffs a formal lien notice and notice of intent to dispose of Plaintiffs' household goods pursuant to applicable warehouseman and interstate-carrier statutes, demanding payment of an outstanding balance of $9,439.00 by no later than May 22, 2026, and threatening permanent disposal of Plaintiffs' entire household in the

event of non-payment. As of the filing of this First Amended Petition, the threat of total loss of Plaintiffs' household goods — including irreplaceable family heirlooms — remains imminent and ongoing as a direct, proximate, and reasonably foreseeable consequence of Better's wrongful refusal to fund the loan. Each month that the loan remains unfunded, Plaintiffs continue to incur additional storage charges at $950.00 per month and continue to face the risk of permanent disposal of their household goods.

40. Plaintiffs incurred out-of-pocket damages including, without limitation, application fees, FHA case-number fees, appraisal fee, credit-report fees, inspection fee, earnest-money exposure, double-rent overlap, Plymouth Van Lines interstate-moving charges, Plymouth Van Lines recurring storage charges of $950.00 per month commencing March 13, 2026 (which, as of the filing of this First Amended Petition, have produced an outstanding balance of not less than $9,439.00), increased rent at replacement housing, and related transaction expenses totaling not less than approximately $32,051.00, exclusive of additional storage charges continuing to accrue, the threatened loss of household goods of approximate replacement value of $150,000.00, and consequential losses identified elsewhere herein.

41. Plaintiffs lost the benefit of their bargain — the $13,000 day-one equity at minimum — and additionally lost the differential between the locked loan rate and the materially less favorable replacement loan rate that would now be needed if Plaintiffs could ever obtain replacement financing.

42. Plaintiffs lost or suffered damage to personal property of approximate replacement value of $150,000.00, and lost or suffered damage to irreplaceable family heirlooms whose value is properly determined by the jury as the actual value to the owner under Missouri's long-settled

rule. Ladeas v. Carter, 845 S.W.2d 45 (Mo. App. W.D. 1992); Breece v. Jett, 556 S.W.2d 696 (Mo. App. 1977).

43. Plaintiff William Wilson suffered medically diagnosable and medically significant emotional distress, including aggravation of his preexisting bipolar disorder, anxiety, depression, sleep disturbance, and other manifestations. Plaintiff Sarah Wilson likewise suffered medically diagnosable and medically significant emotional distress. Plaintiffs will reasonably incur future medical and psychiatric expense as a consequence of Better's conduct.

## J. Pattern-and-Practice Allegations (Made on Information and Belief)

44. On information and belief, Better's conduct in the Plaintiffs' file was not an isolated incident. On information and belief, following Better's December 2023 initial public offering and the well-publicized series of large-scale Better workforce reductions, Better operated under unusual underwriting and capacity pressure. On information and belief, Better adopted underwriting and closing practices that systematically permitted loan officers to make representations of imminent closing in advance of completed verifications, leading to repeated incidents in which borrowers were told they had "clear to close" while internal closing personnel simultaneously informed settlement agents that the loans were not clear to close. Discovery is reasonably expected to disclose the existence of comparable incidents demonstrating a pattern-and-practice of unfair and deceptive conduct subjecting borrowers to the same kind of injury inflicted upon the Plaintiffs.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

## IV. CAUSES OF ACTION

### COUNT I — BREACH OF MORTGAGE LOAN COMMITMENT

45. Plaintiffs incorporate by reference each of paragraphs 1 through 44 as though fully set forth herein.

46. Under Missouri law, the elements of a breach-of-contract claim are: (a) the existence and terms of a contract; (b) the plaintiff's performance or tender of performance; (c) the defendant's breach; and (d) damages resulting from that breach. Keveney v. Missouri Military Academy, 304 S.W.3d 98, 104 (Mo. banc 2010).

47. Better issued, and Plaintiffs accepted, a written Mortgage Commitment Letter dated on or about February 17, 2026. The Commitment expressly recited that it was "binding upon both parties," identified the loan terms, identified the conditions that Better itself was required to manage prior to closing, and was supported by mutual consideration including the application, the locked rate, the issued case number, the engaged appraisal, the borrower's payment of fees, the borrower's cash-to-close wire, and the borrower's relocation in reliance.

48. The Commitment, together with Better's contemporaneous internal documentation of the loan terms, satisfies the writing requirement of RSMo § 432.047. Bailey v. Hawthorn Bank, 382 S.W.3d 84, 102–05 (Mo. App. W.D. 2012) (internal bank documentation of credit-agreement terms satisfies § 432.047).

49. Better's Commitment created a binding obligation to fund the loan provided that Better's own conditions (verbal verification of employment within ten days of closing, soft credit review, title, appraisal, fraud review, and pre-closing quality control) were satisfied. At all relevant times, those conditions were either satisfied or were within Better's exclusive control to satisfy. To the extent any condition was unsatisfied, Better was responsible for the failure.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

50. Plaintiffs performed or tendered performance of each and every obligation imposed upon them by the Commitment. Plaintiffs locked the rate, paid all required fees, signed all required disclosures and certifications, made all required disclosures of financial information, wired the required cash-to-close, executed the FHA Amendatory Clause, secured and paid for the appraisal, and complied with every reasonable underwriting request that Better made of them, including substituting alternate documentation when Better rejected Plaintiff's 401(k) screenshot.

51. Better breached the Commitment by failing and refusing to fund the loan on March 19, 2026, by failing to fund the loan at any subsequent time, by manufacturing pretextual underwriting objections (the "Klarna" objection; the post-hoc "reserve requirement"; the "UnverifiableInformation" adverse-action rationale), and by failing to satisfy those conditions of the Commitment that were Better's own responsibility to manage.

52. To the extent Better contends that any contractual condition subsequent excused its performance, Better's contention is barred because Better did not lawfully invoke any such condition, the conditions Better has invoked are pretextual, and Missouri law does not permit a lender to treat its own discretionary underwriting steps as conditions-subsequent excusing performance on a binding written commitment. Pointe Development, LLC v. Enterprise Bank & Trust, 316 S.W.3d 543 (Mo. App. W.D. 2010).

53. As the direct and proximate result of Better's breach of the Commitment, Plaintiffs have suffered the damages set forth in paragraphs 40 through 43 above, including without limitation out-of-pocket damages, lost benefit of the bargain, increased housing costs, lost personal-property value, and the consequential damages reasonably foreseeable at the time the Commitment was issued.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

54. In addition, Better's breach was committed with such reckless disregard for the rights and interests of the Plaintiffs as to permit imposition of punitive damages. Bailey v. Hawthorn Bank, 382 S.W.3d 84, 110 (Mo. App. W.D. 2012) (affirming punitive damages against lender on clear-and-convincing evidence of reckless disregard for borrower's interests in failing to close a promised loan). The factual predicate for punitive damages, pleaded pursuant to RSMo § 510.261, includes: (a) Better issued a binding written commitment to first-time home-buyer Plaintiffs knowing that Plaintiffs were undertaking a 1,800-mile interstate relocation from Palmdale, California in reliance upon it; (b) Better's loan officer made affirmative misrepresentations on March 17, 2026 that the loan was clear to close while Better's closing department was simultaneously informing the settlement agent the opposite was true; (c) Better caused Plaintiffs to wire cash-to-close, contract with an interstate moving carrier to transport all of their household goods cross-country, and arrive at a closing that Better knew it had no intention or operational ability to fund; and (d) Better issued an Adverse-Action Notice whose stated reason was a single, vague, conclusory word — "UnverifiableInformation" — to mask its own internal disorder.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count I, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT II — BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

55. Plaintiffs incorporate by reference each of paragraphs 1 through 54 as though fully set forth herein.

56. Missouri law implies a covenant of good faith and fair dealing in every contract. Mo. Consolidated Health Care Plan v. Community Health Plan, 81 S.W.3d 34, 45 (Mo. App. W.D. 2002). "Bad faith" in this context includes "evasion of the spirit of the bargain," abuse of discretion in performing or in determining discretionary contractual functions, and lack of diligence and slacking off. Id.

57. Better had unilateral and discretionary control over the underwriting, verification, conditions clearance, document preparation, funding, and closing-coordination functions of the Commitment. Better was bound to perform those discretionary functions in good faith and consistent with the Plaintiffs' reasonable expectations under the Commitment.

58. Better breached the implied covenant of good faith and fair dealing by, inter alia:

(a) abusing discretion in the timing and substance of its underwriting decisions, including imposing the $8,500 "reserve requirement" only after Plaintiffs had relocated and wired cash-to-close; (b) abusing discretion in the assertion of pretextual underwriting objections, including the demonstrably false "Klarna" assertion; (c) evading the spirit of the bargain by issuing a binding commitment with apparent intent to fund and thereafter refusing to fund without lawful basis; (d) failing to perform its own conditions diligently — including the verbal verification of employment that Better had ten days to complete and that Better's closing department instead allowed to remain "pending" while the loan officer affirmatively represented to the borrower that the loan was clear to close; (e) issuing inconsistent representations to the borrower and the settlement agent on the same day, causing the settlement agent to revise closing documents in reasonable reliance on a representation Better's own closing department contradicted within hours; and (f) issuing an adverse-action notice whose

stated rationale was indistinguishable from no rationale at all, in order to avoid acknowledging Better's own failure to honor the Commitment in good faith.

59. As the direct and proximate result of Better's breach of the implied covenant, Plaintiffs suffered the damages set forth in paragraphs 40 through 43.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count II, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT III — FRAUDULENT MISREPRESENTATION (Pleaded with Particularity Pursuant to Rule 55.15)

60. Plaintiffs incorporate by reference each of paragraphs 1 through 59 as though fully set forth herein.

61. The elements of fraudulent misrepresentation under Missouri law are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of falsity or ignorance of the truth; (5) the speaker's intent that the representation be acted upon by the hearer in the manner contemplated; (6) the hearer's ignorance of the falsity; (7) the hearer's reliance on the truth of the representation; (8) the hearer's right to rely thereon; and (9) consequent and proximately caused injury. Clark v. Olson, 726 S.W.2d 718, 719 (Mo. banc 1987).

62. Plaintiffs plead the following specific fraudulent misrepresentations of fact, in compliance with Mo. R. Civ. P. 55.15:

(a) Misrepresentation One — "Assets and Income Already Verified; No Reserves Needed; 401(k) Task Will Be Overridden": Who: Ashley Rayne Gould-Martinez, licensed loan officer of Better, acting within the course and scope of her employment and with actual and apparent authority. What: In response to Plaintiff William Wilson's same-

day written email questioning the approximately $15,000 cash-to-close figure on Better's then-current Loan Estimate (in addition to the $10,000 in earnest money Plaintiffs had already paid to the title company), Ashley represented to Plaintiff, in substance and in part verbatim: (i) that Plaintiffs' cash to close would be set at exactly 3.5% of the purchase price — the FHA-required minimum down payment — and no more; (ii) that Plaintiff's 401(k) funds would not be needed for or used in any part of the transaction; (iii) that Plaintiff could "ignore" the 401(k) verification task that had appeared on his Better borrower portal, and that Ashley herself would "override" or "delete" that task from the portal; and (iv) that Better had "already verified enough assets and income" on the file, and that Plaintiff should "not worry about it." Ashley made no mention whatsoever of any cash-reserve requirement. When: February 25, 2026 — twelve (12) days prior to the originally scheduled closing of March 13, 2026. Where: Telephone conversation initiated by Ashley in response to Plaintiff William Wilson's contemporaneous email, with Plaintiff located in St. Francois County, Missouri. How: Oral representations made directly to Plaintiff William Wilson during the telephone conversation, in immediate response to Plaintiff's written inquiry of the same date. Falsity: Each component of the representation was false. On March 9, 2026 — only four (4) days before the scheduled closing and only twelve (12) days after the representations were made — Ashley reversed course and informed Plaintiff that an $8,500 cash-reserve requirement existed on the file; that Plaintiff's 401(k) funds would be required to satisfy that requirement; and that, contrary to Ashley's February 25, 2026 assurances, Better had not in fact "already verified enough assets and income" on the file. The fact, magnitude, and timing of this reversal demonstrate

that the representations of February 25, 2026 were either (i) knowingly false when made, or (ii) made with reckless disregard for the truth. Plaintiffs are further informed and believe, and on that basis allege, that Ashley never "overrode" or "deleted" the 401(k) verification task from the borrower portal as she represented she would.

(b) Misrepresentation Two — Klarna Transactions as "Large or Recurring Payment[s]": Who: Better's underwriting personnel, communicating through Better's borrower portal and through processor Philip Chan and loan officer Ashley. What: Three (3) separately generated borrower-portal verification tasks each characterizing, on its face, one of three small one-time debit-card purchases as a "large or recurring payment" requiring documentation of "what the payment is and how often it's being paid," with reference to "recent account statements, loan agreements, and promissory notes" as examples of the type of documentation required. The three transactions, verbatim as stated by Better in the borrower portal, were: (i) "$52.4 made from your Chase account 5021 on 2/9/2026 to Klarna"; (ii) "$40 made from your Chase account 5021 on 1/26/2026 to Klarna"; and (iii) "$15.54 made from your Chase account 5021 on 2/18/2026 to Klarna." When: On or about March 11, 2026. Where: Better's borrower portal and email communications with Plaintiff William Wilson in St. Francois County, Missouri. How: Written portal task templates issued to Plaintiff William Wilson and reinforced by oral communications from Better personnel. Falsity: On the face of Better's own task language, none of the three transactions was "large" — the amounts were $52.40, $40.00, and $15.54 — and none of the three transactions was "recurring" — the entries reflected three different amounts on three different dates, with no common amount, no periodicity, and no pattern consistent

with a recurring obligation. Plaintiff William Wilson timely submitted a verified letter of explanation and Klarna's own customer documentation, which confirmed that the three flagged entries were ordinary paid-in-full debit-card purchases (made via the Klarna Flex card or Klarna express checkout through digital-wallet platforms such as Apple Pay), that no installment balance existed, and that Plaintiff's current Klarna balance was $0. The split-pay feature for which Plaintiff was approved (up to $100) was not used. Better's characterization of these entries as "large or recurring" payments requiring loan-agreement or promissory-note documentation was, on the face of Better's own task language and on the face of the documentation Plaintiff supplied, false and was made either knowingly or with reckless disregard for the truth.

(c) Misrepresentation Three — "Title Work Has Been Ordered, Not Received": Who: Better processor Philip Chan. What: Representation that the title work for the Property had been "ordered, not received" by Better. When: On or about March 10, 2026. Where: Communication to Plaintiff William Wilson in St. Francois County, Missouri. How: Written and oral. Falsity: Lisa Campbell of Preferred Land Title confirmed that the title work had been sent to Better weeks earlier and forwarded it again upon request.

(d) Misrepresentation Four — "Got the Clear to Close": Who: Ashley Rayne Gould-Martinez. What: Representation that the loan was "clear to close." Verbatim text: "Got the clear to close!!!!" When: On the afternoon of March 17, 2026. Where: Text message sent by Ashley to Plaintiff William Wilson in St. Francois County, Missouri. How: Text message communication. Falsity: At the time Ashley's "clear to close"

representation was made earlier on the afternoon of March 17, 2026, Better's own closing department had not cleared the loan to close. At 2:23 p.m. Eastern Time the same day — within hours after Ashley's text — Better's closing-department employee Hasnat Sapui informed Preferred Land Title in writing, verbatim, "No it is not clear to close and also verification employment pending." Hasnat Sapui's 2:23 p.m. statement is a contemporaneous, internal acknowledgment by Better itself that, at the time Ashley made her "clear to close" representation, no such clearance in fact existed.

(e) Misrepresentation Five — "Buyer Has Outstanding Tasks": Who: Better processor Philip Chan. What: Representation to Preferred Land Title that the loan was not clear to close because "buyer has outstanding tasks." When: On or about March 13, 2026. Where: Email communication to Lisa Campbell. How: Written. Falsity: Plaintiff had no outstanding borrower tasks; the file was paused solely because Better was conducting underwriting based on its own manufactured "Klarna" pretext.

(f) Misrepresentation Six — "UnverifiableInformation": Who: Better, by and through its adverse-action personnel. What: Stated reason for adverse action in Better's written Adverse-Action Notice. When: On or about April 1, 2026. Where: Written notice issued to Plaintiffs in St. Francois County, Missouri. How: Written. Falsity: The asserted reason is a generic, conclusory word that masked Better's own internal contradictions. Better knew that the actual reasons for non-funding were not "unverifiable information" of any particular kind, but Better's failure to perform its own clearance functions consistently with its loan officer's affirmative representation that the loan was clear to close.

63. Each of the foregoing representations was material. Each representation related to facts central to the Plaintiffs' decisions to lock the rate, wire cash, relocate from California to Missouri, transport household goods, terminate the California residence, schedule and reschedule closing, and accept the Adverse-Action Notice without immediate legal challenge.

64. At the time each representation was made, Better either knew the representation was false, or was ignorant of the truth and lacked any reasonable basis upon which to make it. In particular, Better knew at the time of Misrepresentation Four (March 17, 2026) that its closing department had not cleared the loan to close, because the closing department itself was telling Preferred Land Title precisely the opposite within hours of (and in some respects before) the loan officer's text to Plaintiff.

65. Each representation was made by Better with the intent that the Plaintiffs would act upon it in the manner contemplated — namely, by continuing to perform under the Commitment, continuing the move-in, continuing to incur out-of-pocket expense, continuing to forebear from securing alternate financing, and proceeding toward a closing date Better selected.

66. Plaintiffs were ignorant of the falsity of each representation when it was made. Plaintiffs justifiably relied upon each representation, both because the representations came from a duly licensed loan officer and her employer-lender on a binding written commitment, and because the representations were made through the regular channels of an active mortgage-loan file.

67. Plaintiffs had a right to rely on each representation. The mortgage-loan relationship between Plaintiffs and Better was one in which Better had special access to underwriting information, exclusive control of the borrower portal, exclusive knowledge of internal closing

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

department communications, and a fiduciary-like obligation to communicate accurately concerning the status of the file.

68. Plaintiffs were injured by their reasonable reliance upon each representation, as set forth in paragraphs 40 through 43 above.

69. Plaintiffs are entitled to recover under the benefit-of-the-bargain measure of damages, including the difference between the value of the Property as represented and the value of what Plaintiffs in fact received (nothing), measured at the time of the transaction. Heberer v. Shell Oil Co., 744 S.W.2d 441 (Mo. banc 1988). Plaintiffs are alternatively entitled to recover the return of all payments and incidental expenses with interest. Id.

70. Better's conduct was committed knowingly, intentionally, recklessly, and with conscious disregard for the rights of the Plaintiffs. The factual predicate for punitive damages, pleaded pursuant to RSMo § 510.261, includes: Better issued conflicting representations to two external parties on the same day; Better's officer maintained the deceptive representation during the four critical days between March 17 and March 19 even as the closing collapsed; Better foreseeably and indifferently injured first-time home-buyer Plaintiffs known to have undertaken an 1,800-mile interstate relocation from Palmdale, California to Farmington, Missouri in reliance.

71. To the extent that Better contends Plaintiffs' fraud claim is barred by the economic-loss doctrine, that contention fails. The duty Better breached was an independent duty arising from the special relationship between licensed mortgage lender and applicant — including statutory and regulatory duties under ECOA, Reg B, and the MMPA — and was not solely contractual. Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184 (Mo. App. S.D. 2010).

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count III, in an amount in excess of $25,000.00 that is fair and reasonable, including benefit-of-the-bargain damages, restitutionary damages where applicable, consequential damages, and the factual predicate for punitive damages pleaded above, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT IV — NEGLIGENT MISREPRESENTATION (Pleaded in the Alternative)

72. Plaintiffs incorporate by reference each of paragraphs 1 through 71 as though fully set forth herein, and plead this Count in the alternative to Count III.

73. Under Missouri law, the elements of negligent misrepresentation are: (1) the defendant supplied information in the course of its business; (2) because of the defendant's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the defendant for the guidance of limited persons in a particular business transaction; (4) the plaintiff justifiably relied on the information; and (5) due to the plaintiff's reliance on the information, the plaintiff suffered a pecuniary loss. Bailey v. Hawthorn Bank, 382 S.W.3d 84, 105 (Mo. App. W.D. 2012).

74. Better is in the business of supplying information to mortgage-loan applicants concerning loan eligibility, underwriting status, and closing readiness. By undertaking to issue a written Mortgage Commitment Letter, by maintaining a borrower portal, by assigning a licensed loan officer, by participating in the FHA loan process, and by issuing an adverse-action notice, Better assumed a duty to exercise reasonable care in the information it supplied to the Plaintiffs. Frame v. Boatmen's Bank, 824 S.W.2d 491, 495 (Mo. App. E.D. 1992) ("once a lender assumes

the responsibility of providing information about a loan, a duty to use due care in providing such information arises").

75. Better supplied the representations set forth in paragraphs 62(a) through 62(f) above to Plaintiffs in the course of Better's business and for the purpose of guiding Plaintiffs in the particular transaction at issue.

76. Better failed to exercise reasonable care in supplying that information. Among other things, Better failed to coordinate the communications of its loan officer with the communications of its closing department such that on March 17, 2026, the two functions issued directly contradictory statements externally to two different parties to the same closing. Better failed to disclose, at the appropriate stages of underwriting, that the reserve requirement, the title status, and the verification of employment were unresolved — instead representing variously that they were resolved, would not be required, or would be resolved within ten days when in fact they were not.

77. Each representation was supplied for the guidance of the Plaintiffs, members of the limited and identifiable group of persons for whose guidance the information was intended.

78. Plaintiffs justifiably relied upon each representation, as set forth in paragraphs 66 and 67 above.

79. As a result of Plaintiffs' justifiable reliance, Plaintiffs suffered pecuniary loss, including the out-of-pocket and consequential damages set forth in paragraphs 40 through 43 above.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count IV, in an amount in excess of $25,000.00 that is fair and reasonable, plus

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT V — VIOLATION OF THE MISSOURI MERCHANDISING PRACTICES ACT (RSMo §§ 407.020, 407.025)

80. Plaintiffs incorporate by reference each of paragraphs 1 through 79 as though fully set forth herein.

81. RSMo § 407.020.1 declares unlawful "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . , in or from the state of Missouri . . . ." RSMo § 407.025.1 creates a private right of action for any person who purchases or leases "merchandise" primarily for personal, family or household purposes and who thereby suffers ascertainable loss as a result of the unlawful conduct.

82. The making and servicing of a residential mortgage loan is the "sale of merchandise" within the meaning of the MMPA, and unfair or deceptive acts "in connection with" such sale fall within the statute. Conway v. CitiMortgage, Inc., 438 S.W.3d 410 (Mo. banc 2014).

82A. Better's unlawful acts are squarely "in connection with" the sale of the loan within the meaning of § 407.020.1. The Missouri Supreme Court has expressly held that "[t]he use of an unlawful practice is a violation of the MMPA whether committed before, during or after the sale, so long as it was made in connection with the sale." Watson v. Wells Fargo Home Mortgage, Inc., 438 S.W.3d 404, 407 (Mo. banc 2014) (internal quotation omitted); Conway, 438 S.W.3d at 414. Conway and Watson confirm that even post-closing servicing and collection conduct — conduct occurring after the credit has been extended — remains "in connection with" the loan because the "sale" of a loan is an ongoing bundle of services that "lasts until the last service is

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

performed or the loan is repaid." Conway, 438 S.W.3d at 414–15. A fortiori, Better's deceptive acts during the origination process itself — the issuance of the binding Commitment, the contemporaneous solicitation of fees and earnest-money expenditures, the manufactured "Klarna" objection, the post-hoc reserve invention, the contradictory "clear to close" and "not clear to close" representations made to the borrower and the settlement agent on the same day, and the conclusory single-word adverse-action notice — are all "in connection with" the very sale of the loan that Better was actively offering to close. Each act bears the requisite "relationship between the sale of merchandise and the alleged unlawful action." Conway, 438 S.W.3d at 414.

83. Plaintiffs purchased the loan and ancillary services from Better primarily for personal, family, and household purposes — namely, the purchase of a residence they intended to occupy as their family home. Plaintiffs are private plaintiffs within the meaning of § 407.025.

84. Better engaged in deception, fraud, false pretense, false promise, misrepresentation, unfair practice, and concealment/suppression/omission of material fact in connection with the sale of the loan and ancillary mortgage services to Plaintiffs. Better's unlawful conduct includes, without limitation:

(a) The false statements identified in paragraph 62(a)–(f); (b) The post-hoc imposition of an undisclosed $8,500 "reserve requirement" four days before closing in contradiction of prior representations; (c) The manufactured "Klarna" objection unsupported by Plaintiff's actual bank records; (d) The simultaneous, contradictory representations issued by Better's loan officer and closing department externally to the borrower and the settlement agent on March 17, 2026; (e) Issuance of an Adverse-Action Notice with a stated reason that does not satisfy the specificity requirement of ECOA, 15

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

U.S.C. § 1691(d), and Regulation B, 12 C.F.R. § 1002.9, see Sayers v. General Motors Acceptance Corp., 522 F. Supp. 835 (W.D. Mo. 1981); and (f) Failure to disclose to Plaintiffs that the verbal verification of employment, which Better had committed to complete within ten days of closing, was unresolved at the time Better's loan officer affirmatively represented that the loan was clear to close.

85. Each act of unlawful conduct alleged in paragraph 84 occurred "in connection with" the sale of the loan in or from the State of Missouri.

86. As a direct and proximate result of Better's unlawful conduct, Plaintiffs suffered concrete, identifiable, and ascertainable loss, including, without limitation, application fees, FHA case-number fees, lock fees, appraisal fees, credit-report fees, inspection fees, the difference between the contract price ($410,000) and the appraised value ($423,000), and the out-of-pocket and consequential damages set forth in paragraphs 40 through 43. Plaintiffs specifically plead concrete fees paid as a result of Better's unlawful conduct, including the $4,112.00 cash-to-close wire of February 27, 2026. Binkley v. American Equity Mortgage, 447 S.W.3d 194 (Mo. banc 2014).

87. Under § 407.025, Plaintiffs are entitled to recover actual damages, including benefit-of-the-bargain damages. Schoenlein v. Routt Homes, Inc., 260 S.W.3d 852 (Mo. App. E.D. 2008); Sunset Pools of St. Louis, Inc. v. Schaefer, 869 S.W.2d 883 (Mo. App. E.D. 1994).

88. Plaintiffs are further entitled to recover discretionary punitive damages and reasonable attorneys' fees, as the Court may deem appropriate, under § 407.025. Schoenlein, 260 S.W.3d at 858–60. Plaintiffs presently appear pro se and have incurred no attorneys' fees as of the date of this filing, but reserve the right to retain counsel during the pendency of this action

and to recover counsel's fees if so retained. Plaintiffs further reserve the right to recover costs of investigation and litigation under § 407.025.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count V, in an amount in excess of $25,000.00 that is fair and reasonable, including actual damages, benefit-of-the-bargain damages, discretionary statutory punitive damages, reasonable attorneys' fees and costs of litigation should counsel be retained, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VI — TORTIOUS INTERFERENCE WITH CONTRACT (Wilson–Honey Bee Holdings LLC Real-Estate Purchase Contract)

89. Plaintiffs incorporate by reference each of paragraphs 1 through 88 as though fully set forth herein.

90. Under Missouri law, the elements of tortious interference with a contract or valid business expectancy are: (1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or expectancy; (3) intentional interference by the defendant inducing or causing a breach of the contract or expectancy; (4) absence of justification; and (5) damages resulting from the defendant's conduct. Nazeri v. Missouri Valley College, 860 S.W.2d 303 (Mo. banc 1993); Western Blue Print Co. v. Roberts, 367 S.W.3d 7 (Mo. banc 2012).

91. Plaintiffs had a binding written real-estate purchase contract with Honey Bee Holdings LLC for the purchase of the Property at the price of $410,000.00. The contract was valid and enforceable.

92. Better had actual knowledge of the contract, its closing date, its cash-to-close terms, the FHA Amendatory Clause (which Better required and which the Seller countersigned), and Better's role as financier.

93. Better is a third party to the contract between Plaintiffs and Seller; the tortious-interference claim is properly directed at Better because Better was not a party to the Wilson–Seller purchase contract. Zipper v. Health Midwest, 978 S.W.2d 398 (Mo. App. W.D. 1998).

94. Better intentionally interfered with the contract by, inter alia:

(a) representing to Preferred Land Title on March 13, 2026 that the file was not clear to close because the "buyer has outstanding tasks," when Plaintiffs had none; (b) representing to Preferred Land Title on March 17, 2026 at 2:23 p.m. Eastern Time that the loan was not clear to close, within hours after its loan officer had represented to the borrower that the loan was clear to close; (c) failing to fund on the rescheduled March 19, 2026 closing despite its binding written Commitment; (d) inducing Plaintiffs' inability to perform the Wilson–Seller contract on the dates the Seller had set; and (e) issuing an Adverse-Action Notice that prevented Plaintiffs from immediately securing replacement financing.

95. Better acted without justification. Better had no legal right to issue conflicting communications to the borrower and the settlement agent regarding the readiness of the loan to fund. Better had no legal right to manufacture pretextual underwriting objections, to impose a previously undisclosed reserve requirement after Plaintiffs had relocated and wired funds, or to characterize Plaintiffs' diligently produced documentation as "UnverifiableInformation." Better's conduct constituted "improper means" within the meaning of the tortious-interference doctrine, including misrepresentations of fact and wrongful acts. Nazeri, 860 S.W.2d at 317.

96. But for Better's interference, Plaintiffs and Seller would have closed the contract on or before March 13, 2026, or alternatively on March 19, 2026, and Plaintiffs would have

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

received the benefit of the bargain represented by the day-one equity and the long-term homeownership at the locked rate.

97. As the direct and proximate result of Better's tortious interference, Plaintiffs suffered the damages set forth in paragraphs 40 through 43 above, including specifically the loss of the contract bargain.

98. Better's interference was committed knowingly, intentionally, and with conscious disregard for Plaintiffs' rights, supporting recovery of punitive damages on clear-and-convincing evidence. The factual predicate is pleaded as set forth in paragraphs 54 and 70 above and is incorporated here by reference.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count VI, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VII — NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Including Aggravation of Preexisting Condition)

99. Plaintiffs incorporate by reference each of paragraphs 1 through 98 as though fully set forth herein.

100. Under Missouri law, a plaintiff may recover for negligent infliction of emotional distress when (a) the defendant should have realized that the conduct involved an unreasonable risk of causing the distress, and (b) the emotional distress is medically diagnosable and medically significant. Bass v. Nooney Co., 646 S.W.2d 765 (Mo. banc 1983); Asaro v. Cardinal Glennon Memorial Hospital, 799 S.W.2d 595 (Mo. banc 1990). A direct-victim plaintiff need not satisfy any additional zone-of-danger requirement. Jarrett v. Jones, 258 S.W.3d 442 (Mo. banc 2008); Biersmith v. Curry Ass'n Management, 359 S.W.3d 84 (Mo. App. W.D. 2011).

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

101. Better owed Plaintiffs a duty of reasonable care arising from the mortgage-lender / mortgage-applicant relationship, the binding written Commitment, Better's statutory duties under ECOA and Reg B, and Better's voluntary undertaking to provide information about the loan to Plaintiffs in St. Francois County, Missouri. Frame v. Boatmen's Bank, 824 S.W.2d 491 (Mo. App. E.D. 1992).

101A. Plaintiffs do not allege, and do not need to allege, that Better's duty of reasonable care arose from the parties' contract. The duty pleaded in this Count is grounded in the independent tort of misrepresentation to and concerning a borrower whose preexisting bipolar diagnosis was voluntarily disclosed to and known by Better's licensed loan officer, and in Better's foreseeability of psychiatric injury to a disclosed-fragile borrower expressly told that the loan was "clear to close" and then dropped at the closing table by non-funding. Missouri recognizes that the same act may simultaneously breach a contract and constitute a tortious breach of an independent duty. Autry Morlan Chevrolet, Cadillac, Inc. v. RJF Agencies, Inc., 332 S.W.3d 184, 192–93 (Mo. App. S.D. 2010) ("[T]he complained of act or omission which breaches a contract may also be a negligent act which would give rise to a liability in tort. In this latter instance, it is the act and not the breach of the contract which gives rise to the tort liability."). The duties Plaintiffs allege in this Count would exist on the facts pleaded even in the absence of any contract between Better and the Plaintiffs. The Plaintiffs accordingly disclaim, for purposes of this Count only, any reliance upon the Mortgage Commitment Letter or any other contract between the parties as a source of the duty of care here pleaded.

102. Better knew or should have known that its conduct involved an unreasonable risk of causing Plaintiffs medically diagnosable and medically significant emotional distress. Among other things:

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

(a) Better knew Plaintiffs were undertaking an interstate move based on the binding Commitment; (b) Better knew Plaintiffs were liquidating a California residence in reliance; (c) Better knew Plaintiffs had an infant daughter (born April 12, 2025) and significant family considerations attached to the move; (d) Better knew, by virtue of disclosures made to its loan officer, that Plaintiff William Wilson had a preexisting bipolar disorder and that the stress of the loan process and any disruption to the closing posed a foreseeable, heightened risk of psychiatric injury to him; and (e) Better knew that a borrower told "clear to close," then dropped at the closing table by a non-funding, would experience the loss of housing, the threatened loss of earnest money, displacement of household goods, and the psychiatric consequences naturally flowing therefrom.

103. Better breached its duty of reasonable care by the conduct alleged in paragraphs 22 through 36 above.

104. Plaintiff William Wilson suffered emotional distress that is medically diagnosable and medically significant, including aggravation of his preexisting bipolar disorder, severe anxiety, depression, sleep disturbance, and related conditions.

105. Plaintiff Sarah Wilson suffered emotional distress that is medically diagnosable and medically significant, including severe anxiety, depression, sleep disturbance, and related conditions.

106. Under the long-settled Missouri rule, Plaintiff William Wilson is entitled to recover for the aggravation of his preexisting bipolar disorder caused by Better's negligence. *Widener v. St. Louis Public Service Co.*, 230 S.W.2d 698 (Mo. 1950). Better takes its plaintiff as it finds him.

107. As the direct and proximate result of Better's negligence, Plaintiffs have incurred and will reasonably incur past and future psychiatric and medical expenses, lost productivity, diminished enjoyment of life, and severe mental suffering, all in amounts to be proven at trial.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count VII, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT VIII — PROMISSORY ESTOPPEL (Pleaded in the Alternative)

108. Plaintiffs incorporate by reference each of paragraphs 1 through 107 as though fully set forth herein, and plead this Count expressly in the alternative to Counts I and II pursuant to Mo. R. Civ. P. 55.10. Rule 55.10 permits a party to "set forth two or more statements of a claim or defense alternately or hypothetically" and to "state as many separate claims or defenses as the party has regardless of consistency and whether based on legal or equitable grounds." Mo. R. Civ. P. 55.10; Mays-Maune & Associates, Inc. v. Werner Brothers, Inc., 139 S.W.3d 201, 205–06 (Mo. App. E.D. 2004); Murray-Kaplan v. NEC Insurance Inc., No. ED108662 (Mo. App. E.D. Jan. 26, 2021) ("[A] petition may plead a claim for unjust enrichment as an alternative to breach of contract. Pleading claims in the alternative, even if the claims are inconsistent, is permitted by Rule 55.10. While it may be true that [the plaintiff] cannot ultimately recover on both claims, she certainly is not barred from pleading them both in the alternative."). This Count is therefore to be reached only in the event that the Court determines that the Mortgage Commitment Letter is unenforceable, in whole or in part, as a binding contract, or that one or more of Counts I and II otherwise fails as a matter of law. Plaintiffs reserve the right to elect

among inconsistent theories at submission. Burns Nat'l Lock Installation Co. v. Am. Family Mut. Ins. Co., 61 S.W.3d 262, 272 (Mo. App. E.D. 2001).

109. Under Missouri law, the elements of promissory estoppel are: (1) a promise; (2) on which the plaintiff detrimentally relied; (3) in a manner the promisor should reasonably have foreseen; and (4) injustice can be avoided only by enforcement of the promise. Clevenger v. Oliver Insurance Agency, 237 S.W.3d 588, 590 (Mo. banc 2007); Glenn v. HealthLink HMO, Inc., 360 S.W.3d 866 (Mo. App. E.D. 2012).

110. Better made promises to Plaintiffs, including without limitation: (a) the promise contained in the written Mortgage Commitment Letter of February 17, 2026; (b) the February 25, 2026 promise that no reserves would be required and the 401(k) funds would not be needed; and (c) the March 17, 2026 promise that the loan was clear to close.

111. Plaintiffs detrimentally relied on each promise. In particular, Plaintiffs (a) gave notice to their California landlord and vacated their rented residence in Palmdale, California, timed to the planned closing; (b) contracted with Plymouth Van Lines, an interstate moving carrier, to transport their entire household more than 1,800 miles from Palmdale, California to Farmington, Missouri; (c) physically relocated their family, including infant daughter E.G.W., across the country; (d) wired cash-to-close; (e) paid all required application, appraisal, and closing-related fees; (f) forewent the opportunity to seek alternate financing during a time when alternate financing might have been timely secured; and (g) reasonably scheduled and rescheduled closing in reliance upon Better's representations.

112. Better should reasonably have foreseen each act of reliance. Better knew Plaintiffs were relocating from California, knew the closing date, and knew that Plaintiffs would act on each affirmative representation made by Better.

113. Injustice can be avoided only by enforcement of the promise to fund the loan or by award of all damages reasonably necessary to place Plaintiffs in the position they would have occupied had the promise been kept.

WHEREFORE, Plaintiffs respectfully pray, in the alternative, for judgment against Better Mortgage Corporation on Count VIII, in an amount in excess of $25,000.00 that is fair and reasonable, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT IX — CIVIL CONSPIRACY

114. Plaintiffs incorporate by reference each of paragraphs 1 through 113 as though fully set forth herein.

115. Under Missouri law, the elements of civil conspiracy are: (1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and (5) as a result thereof, the plaintiff was damaged. Western Blue Print Co., LLC v. Roberts, 367 S.W.3d 7, 22 (Mo. banc 2012); Oak Bluff Partners, Inc. v. Meyer, 3 S.W.3d 777, 780–81 (Mo. banc 1999). Civil conspiracy is not itself actionable in the abstract; it requires an underlying wrongful act "which, absent the conspiracy, would create a right of action against one of the defendants, if sued alone." Western Blue Print, 367 S.W.3d at 22; Phelps v. Bross, 73 S.W.3d 651, 657 (Mo. App. E.D. 2002).

116. The unlawful objectives underlying the conspiracy alleged in this Count are: (a) the fraudulent misrepresentations pleaded in Count III; (b) the tortious interference with the Wilson–Honey Bee Holdings Real-Estate Purchase Contract pleaded in Count VI; and (c) the deceptive conduct pleaded under the Missouri Merchandising Practices Act in Count V. Each of those

underlying wrongs would, standing alone, create a right of action against the wrongdoer and is sufficient to anchor a civil conspiracy claim under Missouri law.

117. The conspirators include, without limitation: (a) Defendant Better Mortgage Corporation; (b) Ashley Rayne Gould-Martinez (NMLS #1943523), Better's loan officer; (c) Hasnat Sapui, a member of Better's closing department (e-mail address hsapui@better.com); and (d) Philip Chan, Better's processor. Plaintiffs reserve the right, after discovery, to amend to add additional individual conspirators (including without limitation any additional Better employees or agents whose participation is revealed by discovery) and other persons or entities outside Better whose participation in or coordination with the wrongful acts is revealed by discovery. For the avoidance of doubt, Lisa Campbell, the closer at Preferred Land Title, LLC, is not pleaded as a conspirator; she is pleaded throughout this Petition as a non-party, third-party settlement agent who acted in reasonable reliance on the borrower-relayed representation that Better's loan officer had communicated clear-to-close, and who was thereby caused to issue revised closing documents in reliance on Better's own internal misrepresentations.

118. The meeting of the minds is shown by the conduct and communications between and among Better's agents on and around March 13, 2026 and March 17, 2026, including without limitation: (a) Philip Chan's March 13, 2026 e-mail to Preferred Land Title representing that the file was not clear to close because "buyer has outstanding tasks," at a time when Plaintiff had no outstanding tasks; (b) Ashley Rayne Gould-Martinez's March 17, 2026 text-message representation to Plaintiff William Wilson stating, verbatim, "Got the clear to close!!!!"; (c) Hasnat Sapui's contemporaneous March 17, 2026 2:23 p.m. e-mail communication to Preferred Land Title (the third-party settlement agent), stating, verbatim, "No it is not clear to close and also verification employment pending," — communicated to the title company at the very

moment Better's own loan officer had told the borrower the opposite; and (d) Better's subsequent issuance of an Adverse-Action Notice citing a single vague, conclusory word — "UnverifiableInformation" — to mask Better's internal disorder and the conflicting representations its agents had made to Plaintiffs and to third parties. These coordinated, contemporaneous, and directly contradictory representations issued by Better's loan officer to the borrower and by Better's closing department to the third-party settlement agent on the same day — and Better's failure thereafter to correct, retract, or reconcile either representation — are not innocent miscommunication; they are circumstantial evidence of an agreement among Better and its agents to project to Plaintiffs and to the settlement agent whatever representation each agent's role required in order to maintain Better's pipeline, preserve Ashley Rayne Gould-Martinez's individual commission, and avoid Better's accountability for its own misconduct.

119. Acts in furtherance of the conspiracy include, without limitation, each of the acts pleaded in paragraphs 1 through 113 above, including without limitation: (a) the issuance of the February 17, 2026 Mortgage Commitment Letter while material conditions remained unresolved; (b) the February 25, 2026 representations that no reserves would be required and the 401(k) funds would not be needed; (c) the March 17, 2026 simultaneous and contradictory representations to Plaintiffs and the settlement agent; (d) the inducement of Plaintiffs to wire $4,112.00 in cash-to-close on February 27, 2026; (e) the issuance of the March 19, 2026 Adverse-Action Notice citing a vague, non-specific reason that did not honestly disclose the actual cause of Better's refusal to fund; and (f) the failure of any agent of Better to correct or disclose the conflicting representations during the four critical days between March 17 and March 19, 2026.

120. Intracorporate-conspiracy doctrine does not bar this Count for at least three independent reasons: (a) the conspiracy is pleaded as between Better and one or more individual agents who acted outside the scope of their authority and for their own personal commission, retention, or reputational stake — most notably Ashley Rayne Gould-Martinez, whose individual loan-officer commission and pipeline stood to be impaired by an honest disclosure of the loan's status — bringing this case within the personal-stake exception recognized by courts addressing the doctrine; (b) Plaintiffs reserve the right to amend, after discovery, to add as conspirators third parties outside Better, including without limitation any title company, settlement agent, broker-channel partner, or vendor whose participation is revealed by discovery; and (c) Missouri has not adopted the intracorporate-conspiracy doctrine as an absolute bar in private actions of this type, and any application of the doctrine on these facts would be premature at the pleading stage.

121. As a direct and proximate result of the conspiracy and the acts in furtherance thereof, Plaintiffs have suffered each of the damages enumerated in this Petition, including without limitation those enumerated in paragraphs 40, 70, and 131 below, and all conspirators are jointly and severally liable for all damages naturally flowing from the conspiracy. Gettings v. Farr, 41 S.W.3d 539, 542 (Mo. App. E.D. 2001) (each conspirator is jointly and severally liable for all damages naturally flowing from the conspiracy).

122. Better's conduct, and that of its agents acting in furtherance of the conspiracy, was committed knowingly, intentionally, and with conscious and reckless disregard for the rights and interests of Plaintiffs, and the factual predicate for punitive damages is pleaded pursuant to RSMo § 510.261.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count IX, in an amount in excess of $25,000.00 that is fair and reasonable, with

the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## COUNT X — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

123. Plaintiffs incorporate by reference each of paragraphs 1 through 122 as though fully set forth herein, and plead this Count expressly in the alternative to, and additionally and independently of, Count VII (Negligent Infliction of Emotional Distress) pursuant to Mo. R. Civ. P. 55.10.

124. Under Missouri law, the elements of intentional infliction of emotional distress are: (1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or recklessly committed; and (3) the conduct caused severe emotional distress that resulted in bodily harm. Nazeri v. Missouri Valley College, 860 S.W.2d 303, 316 (Mo. banc 1993); K.G. v. R.T.R., 918 S.W.2d 795, 799 (Mo. banc 1996); Kuehner v. Denny Loan Corp., 518 S.W.2d 94, 95–96 (Mo. App. 1974); see also Restatement (Second) of Torts § 46. Conduct is sufficiently extreme and outrageous when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Kuehner, 518 S.W.2d at 96 (quoting Restatement (Second) of Torts § 46 cmt. d).

125. Better's conduct, taken as a whole, satisfies the extreme-and-outrageous threshold for purposes of pleading. The factual predicate for the extreme-and-outrageous element includes, without limitation:

(a) Better issued a binding written Mortgage Commitment Letter on February 17, 2026 to first-time home-buyer Plaintiffs with actual knowledge that Plaintiffs were

undertaking an interstate relocation of more than 1,800 miles from Palmdale, California to St. Francois County, Missouri in direct reliance upon that commitment;

(b) Better had actual knowledge, at all relevant times, that Plaintiffs were the parents of an infant daughter (E.G.W., d.o.b. April 12, 2025) who would be physically transported across the country in reliance upon Better's commitment;

(c) Better had actual or constructive knowledge that Plaintiff William Wilson lives with a documented preexisting psychiatric condition (bipolar disorder), which Better knew or should have known would be foreseeably aggravated by the collapse of an interstate residential closing of this magnitude;

(d) Better induced Plaintiffs to wire $4,112.00 in cash-to-close on February 27, 2026, to physically relocate their entire household by interstate moving carrier, and to give up the lease of their rented residence in Palmdale, California, all while Better's own loan officer had instructed Plaintiffs to delete or override portal tasks that, by Better's own internal standards, should have been completed before issuance of the commitment;

(e) On March 17, 2026, Better's agents made directly contradictory representations to the borrower on one hand and to the third-party settlement agent on the other on the same afternoon — Ashley Rayne Gould-Martinez, Better's loan officer, texted Plaintiff William Wilson the words, verbatim, "Got the clear to close!!!!", while at 2:23 p.m. Eastern Time the same day Hasnat Sapui of Better's closing department wrote to Lisa Campbell of Preferred Land Title that "No it is not clear to close and also verification employment pending"; Lisa Campbell, the third-party settlement agent, in reasonable reliance on the borrower-relayed representation that Better's loan officer had said clear-to-close, replied to Better at 3:13 p.m. confirming she had revised the closing

disclosure and scheduled closing for the following day; and Better's agents maintained those contradictory positions during the four critical days between March 17 and March 19, 2026, even as the closing collapsed and Plaintiffs continued to act in reliance;

(f) On March 19, 2026, after Plaintiffs had relocated cross-country, after their household goods were already in interstate transit, and after they had wired cash-to-close, Better issued an Adverse-Action Notice whose stated reason for refusing to fund was a single, vague, conclusory term — "UnverifiableInformation" — calculated to mask Better's own internal disorder rather than honestly disclose the actual cause of denial;

(g) Better's conduct foreseeably and proximately caused the displacement of Plaintiffs and their infant child, the entrapment of Plaintiffs' entire household and irreplaceable family heirlooms in interstate-carrier storage at $950.00 per month commencing March 13, 2026, and the May 15, 2026 issuance by Plymouth Van Lines of a formal lien notice threatening permanent disposal of Plaintiffs' household goods unless an outstanding balance of $9,439.00 was satisfied by May 22, 2026 — the threat of which remains imminent and ongoing as of the filing of this First Amended Petition;

(h) Better is one of the largest non-bank residential mortgage originators in the United States and at all relevant times held itself out as a sophisticated, professional, FHA-approved lender operating in a position of substantial informational and economic superiority over the first-time home-buyer Plaintiffs. The recitation of the foregoing facts to an average member of the community would arouse resentment against Better and lead the average member to exclaim, "Outrageous!"

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

126. Better's conduct was intentional or, at minimum, recklessly committed. Better acted with the deliberate purpose of inducing Plaintiffs' reliance, and with reckless disregard for the substantial probability that its conduct would cause Plaintiffs severe emotional distress. Better's own internal records (which Plaintiffs anticipate obtaining through discovery) are anticipated to demonstrate that Better's closing department, loan officer, and underwriting personnel each had access to the conflicting information regarding the status of the loan and chose to communicate inconsistent, self-serving representations to Plaintiffs and to third parties rather than honestly disclose the actual status of the loan.

127. Better's conduct caused Plaintiffs to suffer severe emotional distress that resulted in bodily harm and medically significant psychiatric injury, including without limitation: (a) significant and medically documented aggravation of Plaintiff William Wilson's preexisting bipolar disorder; (b) loss of sleep; (c) anxiety, fear, humiliation, and mental anguish associated with the cross-country displacement of Plaintiffs and their infant daughter; (d) the ongoing fear of imminent permanent loss of irreplaceable family heirlooms and household goods to the Plymouth Van Lines lien; and (e) related physical sequelae of severe emotional distress.

128. This Count is independent of, and does not depend upon, any defamatory or contract-based theory, and the conduct pleaded above goes beyond and is independently outrageous apart from any breach of the Mortgage Commitment Letter or the implied covenant of good faith and fair dealing. Cf. Nazeri, 860 S.W.2d at 316 (intentional infliction of emotional distress will not lie where the offending conduct consists only of a separately actionable wrong such as defamation, but will lie where the petition pleads additional wanton and outrageous acts). Plaintiffs further plead this Count in the alternative to Count VII pursuant to Mo. R. Civ. P. 55.10, recognizing that Plaintiffs may not ultimately recover duplicative damages for the same

emotional injury under both NIED and IIED theories. Burns Nat'l Lock Installation Co. v. Am. Family Mut. Ins. Co., 61 S.W.3d 262, 272 (Mo. App. E.D. 2001).

129. Better's conduct was committed knowingly, intentionally, and with conscious disregard for the rights and well-being of Plaintiffs. The factual predicate for punitive damages, pleaded pursuant to RSMo § 510.261, is incorporated by reference from paragraphs 54 and 70 above and from the facts set forth in this Count.

WHEREFORE, Plaintiffs respectfully pray for judgment against Better Mortgage Corporation on Count X, in an amount in excess of $25,000.00 that is fair and reasonable, including damages for severe emotional distress, aggravation of preexisting psychiatric condition, past and future medical and psychiatric care, and bodily-harm sequelae, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261, plus pre-judgment interest, post-judgment interest, costs, and such other and further relief as the Court deems just and proper.

## V. DAMAGES — SUMMARY AND VALUATION

130. Plaintiffs incorporate by reference each of paragraphs 1 through 129 as though fully set forth herein.

131. Plaintiffs have suffered and will continue to suffer the following damages, in amounts to be proved at trial:

(a) OUT-OF-POCKET / RELIANCE DAMAGES: application fees, FHA case-number fees, lock fees, appraisal fees, credit-report fees, inspection fees, earnest money, the $4,112.00 cash-to-close wire of February 27, 2026, moving expenses, storage costs, double-rent overlap, and related transaction costs, in a total approximate amount of $32,051.00 as documented to date and subject to amendment as discovery progresses.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

(b) LOST BENEFIT OF THE BARGAIN: the difference between the appraised value of $423,000.00 and the contract price of $410,000.00 — $13,000.00 of day-one equity at minimum — plus the differential between the locked loan rate and any replacement-financing rate that may now be available to Plaintiffs. Heberer v. Shell Oil Co., 744 S.W.2d 441 (Mo. banc 1988); Schoenlein, 260 S.W.3d 852.

(c) PERSONAL PROPERTY DAMAGES: replacement cost of approximately $150,000.00 for ordinary household personal property lost or damaged as a foreseeable consequence of the storage and displacement caused by Better's conduct.

(d) HEIRLOOM / IRREPLACEABLE PROPERTY DAMAGES: the actual value to the owner of irreplaceable family heirlooms, photographs, and items of intrinsic family significance, in an amount determined by the jury based on the facts and circumstances of this case. Ladeas v. Carter, 845 S.W.2d 45 (Mo. App. W.D. 1992); MacKey v. Goslee, 244 S.W.3d 261 (Mo. App. S.D. 2008); Breece v. Jett, 556 S.W.2d 696 (Mo. App. 1977).

(e) CONSEQUENTIAL / RELIANCE DAMAGES: losses naturally and foreseeably flowing from Better's conduct, including loss of the Wilson–Seller transaction, increased rent at temporary replacement housing, loss of health-insurance continuity, employment-deterioration consequences, additional moving costs, and storage costs.

(f) EMOTIONAL DISTRESS / NIED DAMAGES: past and future psychiatric and medical care; severe mental suffering; loss of sleep; aggravation of preexisting bipolar disorder; lost enjoyment of life; and related general damages, including future medical care reasonably certain to be required. Bass v. Nooney Co., 646 S.W.2d 765; Widener, 230 S.W.2d 698.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

(g) MMPA STATUTORY REMEDIES: actual damages, discretionary punitive damages, reasonable attorneys' fees (subject to retention of counsel), and costs. RSMo § 407.025.

(h) PRE-JUDGMENT INTEREST: on liquidated and ascertainable damages from the date demand for a specific amount was first made. RSMo § 408.040.

132. PUNITIVE DAMAGES — FACTUAL PREDICATE: Plaintiffs plead the factual predicate for punitive damages on Counts I, III, V, VI, VII, IX, and X pursuant to RSMo § 510.261 and Bailey v. Hawthorn Bank, 382 S.W.3d 84 (Mo. App. W.D. 2012). Pursuant to RSMo § 510.261, no specific punitive amount is alleged in this petition; Plaintiffs reserve the right, after appropriate discovery and upon leave of court, to seek leave to amend to plead a specific punitive amount. Plaintiffs reserve all rights under MacKey v. Goslee, 244 S.W.3d 261 (Mo. App. S.D. 2008), to make any required election or showing of actual damages prior to award of punitives.

## VI. JURY DEMAND

133. Pursuant to Article I, § 22(a) of the Missouri Constitution and Mo. R. Civ. P. 69.01, Plaintiffs hereby demand a trial by jury on all issues so triable.

## VII. PRAYER FOR RELIEF

WHEREFORE, having pleaded all causes of action and incorporated all factual allegations by reference, Plaintiffs William Wilson and Sarah Wilson respectfully pray for judgment against Defendant Better Mortgage Corporation as follows:

A. On Count I (Breach of Mortgage Loan Commitment) — in an amount in excess of $25,000.00 that is fair and reasonable;

B. On Count II (Breach of Implied Covenant of Good Faith and Fair Dealing) — in an amount in excess of $25,000.00 that is fair and reasonable;

C. On Count III (Fraudulent Misrepresentation) — in an amount in excess of $25,000.00 that is fair and reasonable, including benefit-of-the-bargain damages, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

D. On Count IV (Negligent Misrepresentation, in the alternative) — in an amount in excess of $25,000.00 that is fair and reasonable for pecuniary loss;

E. On Count V (Missouri Merchandising Practices Act, RSMo §§ 407.020, 407.025) — actual damages, discretionary statutory punitive damages, reasonable attorneys' fees (subject to retention of counsel), costs of investigation and litigation, and such further statutory remedies as the Court may deem appropriate;

F. On Count VI (Tortious Interference with the Wilson–Honey Bee Holdings Real-Estate Purchase Contract) — in an amount in excess of $25,000.00 that is fair and reasonable, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

G. On Count VII (Negligent Infliction of Emotional Distress, including aggravation of preexisting condition) — in an amount in excess of $25,000.00 that is fair and reasonable;

H. On Count VIII (Promissory Estoppel, in the alternative) — in an amount in excess of $25,000.00 that is fair and reasonable;

I. On Count IX (Civil Conspiracy) — in an amount in excess of $25,000.00 that is fair and reasonable, jointly and severally against all conspirators, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

J. On Count X (Intentional Infliction of Emotional Distress) — in an amount in excess of $25,000.00 that is fair and reasonable, including damages for severe emotional distress, aggravation of preexisting psychiatric condition, past and future medical and psychiatric care, and bodily-harm sequelae, with the factual predicate for punitive damages pleaded pursuant to RSMo § 510.261;

K. Pre-judgment interest on liquidated and ascertainable damages from the date of demand pursuant to RSMo § 408.040;

L. Post-judgment interest at the statutory rate;

M. Costs of court, including filing and service costs and reasonable costs of investigation and litigation;

N. An order directing Better to correct the Adverse-Action Notice and to retract any tradeline or consumer-reporting entry caused by Better's wrongful conduct;

O. Reasonable attorneys' fees pursuant to RSMo § 407.025 should counsel be retained during the pendency of this action;

P. Trial by jury on all issues so triable; and

Q. Such other and further legal and equitable relief as the Court deems just and proper.

*First Amended Petition — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

Plaintiffs reserve the right, after appropriate discovery and upon leave of Court pursuant to RSMo § 510.261, to amend this petition to allege a specific punitive damages amount on those Counts for which the factual predicate for punitive damages has been pleaded.

Respectfully submitted,


WILLIAM WILSON, Plaintiff Pro Se
P.O. Box 227
Farmington, Missouri 63640
Telephone: (573) 315-5902
E-mail: Wilwilson1217@outlook.com


SARAH WILSON, Plaintiff Pro Se
P.O. Box 227
Farmington, Missouri 63640
E-mail: Swilson121722@gmail.com



Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed OrderWilliam Wilson to SFRCivil.email@courts.mo.gov 05/23/2026 01:18 PM
Cc "rscherer@lippes.com", "hcominsky@lippes.com"

3 Attachments



26-0523 - Wilson-v-Better-First-Amended-Petition FILE READY.pdf



26-0523 Wilson-Motion-for-Special-Process-Server File Reday.pdf



26-0523 Wilson-Proposed-Order-Special-Process-Server File Ready.pdf



**FILED**

05/26/2026
_____

Kristina Bone
CLERK, CIRCUIT COURT
ST FRANCOIS COUNTY

Dear Clerk of the Circuit Court:

I am the Plaintiff in the above-captioned matter, Wilson v. Better Mortgage Corporation, Case No. 26SF-CC00101, currently pending in the Circuit Court of St. Francois County, Missouri. I respectfully request that the Clerk's office file the following three documents attached to this email:

1. Plaintiffs' First Amended Petition for Damages — filed as of right pursuant to Missouri Supreme Court Rule 55.33(a);

2. Plaintiffs' Motion to Appoint Special Process Server (seeking appointment of Robert Pedroli III as special process server for service of process upon Defendant Better Mortgage Corporation through its registered agent in Missouri); and

3. Proposed Order Appointing Special Process Server (tendered for the Court's consideration in connection with the foregoing Motion).

Please file-stamp the First Amended Petition and the Motion, and please submit the Proposed Order to the assigned Judge for entry at the Court's earliest convenience. Once the Order appointing Robert Pedroli III as special process server has been entered, kindly issue summons directed to Defendant Better Mortgage Corporation, c/o its Missouri registered agent C T Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275, so that service may be effected.

If any filing fee or other action is required from me to complete these filings, please advise me at the email address below and I will promptly comply. I would be grateful for a confirmation of receipt and file-stamped copies of the Petition and Motion at your earliest convenience.

Thank you for your assistance.

Respectfully Submitted,

William Wilson

573-315-5902

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

| | |
|---|---|
| WILLIAM WILSON and ) | |
| SARAH WILSON, ) | Case No. 26SF-CC00101 |
| P.O. Box 227 ) | |
| Farmington, Missouri 63640 ) | Division: _____ |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BETTER MORTGAGE CORPORATION, ) | |
| ) | |
| Defendant. ) | |

**FILED**

05/26/2026
_____

Kristina Bone
CLERK, CIRCUIT COURT
ST FRANCOIS COUNTY

## PLAINTIFFS' MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

COME NOW Plaintiffs William Wilson and Sarah Wilson, appearing pro se, and pursuant to Missouri Supreme Court Rule 54.13(a) and Section 506.140 of the Revised Statutes of Missouri, respectfully move this Court for an order appointing a special process server to effect personal service of process in this action. In support of this Motion, Plaintiffs state as follows:

1. This is a civil action filed in the Circuit Court of St. Francois County, Missouri, in which Plaintiffs assert claims against Defendant Better Mortgage Corporation arising out of the failed FHA-insured mortgage transaction concerning the real property located at 1239 Stono Mountain Drive, Farmington, Missouri 63640.

2. Plaintiffs intend to serve upon Defendant, contemporaneously with this Motion or promptly upon entry of the proposed Order, the following documents: (a) the Summons issued by the Clerk of this Court; (b) the First Amended Petition for Damages and Jury Demand.

*Motion to Appoint Special Process Server — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

3. Service is to be made by personal delivery to Defendant's Missouri registered agent, C T Corporation System, at the address registered with the Missouri Secretary of State: 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275.

4. Defendant's registered agent's office is located in St. Louis County, Missouri, more than seventy (70) miles from the St. Francois County Courthouse. Service by a private special process server based in the St. Louis metropolitan area will be substantially more efficient and economical than service by the St. Francois County Sheriff or a deputy thereof, and will avoid delay in the prosecution of this matter.

5. Pursuant to Missouri Supreme Court Rule 54.13(a), service of process within the State of Missouri may be made by "the sheriff or a person over the age of 18 years who is not a party to the action." Pursuant to Section 506.140.1 of the Revised Statutes of Missouri, "some person, other than a sheriff or coroner, may be specially appointed by the court or the circuit clerk following procedures established by local court rules for service of process in any cause, but such appointment shall be valid for service of the process only for which such person was specially appointed."

6. Plaintiffs request that the Court appoint Robert Pedroli, III, owner and principal of Process Server St. Louis (also known as Eastern Missouri Legal Services), 130 South Bemiston Avenue, Suite 300, Clayton, Missouri 63105, telephone (314) 775-4948, to serve as special process server in this action.

7. Mr. Pedroli is over the age of eighteen (18) years, is not a party to this action, has no interest in the outcome of this action, has been engaged in the business of process service in the St. Louis metropolitan area since 2008, has completed the City of St. Louis Sheriff's training

*Motion to Appoint Special Process Server — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

course for process servers, and maintains errors-and-omissions insurance coverage meeting or exceeding the minimum requirements established by the City of St. Louis Sheriff.

8. In the alternative, and to avoid further delay in the event Mr. Pedroli is unavailable on the date service is attempted, Plaintiffs further request that the Court authorize service by any employee, agent, or independent contractor of Process Server St. Louis (also known as Eastern Missouri Legal Services) who is over the age of eighteen (18) years, is not a party to this action, and is not otherwise disqualified under Missouri law.

9. Plaintiffs will bear the risk and expense of service by the special process server appointed herein, as required by Section 506.140.1 of the Revised Statutes of Missouri.

10. Pursuant to Section 506.140.2 of the Revised Statutes of Missouri, Plaintiffs reserve the right to apply for an award of the reasonable fees paid to the special process server as costs in this action.

11. This appointment, if granted, does not authorize the special process server to carry a concealed weapon in the performance of his or her duties hereunder.

12. No party will be prejudiced by the relief requested. Defendant has not yet entered an appearance in this action, and no attorney has filed an entry of appearance on Defendant's behalf. The relief sought is ministerial in nature and is routinely granted in civil actions in this Circuit and throughout the State of Missouri.

WHEREFORE, Plaintiffs William Wilson and Sarah Wilson respectfully pray that this Court enter an Order: (a) appointing Robert Pedroli, III, of Process Server St. Louis (a/k/a Eastern Missouri Legal Services), 130 South Bemiston Avenue, Suite 300, Clayton, Missouri 63105, as special process server in this action for the purpose of serving the Summons, and First Amended Petition upon Defendant through its registered agent; (b) authorizing, in the

alternative, service by any employee, agent, or independent contractor of Process Server St. Louis who is over the age of eighteen (18) years, is not a party to this action, and is not otherwise disqualified under Missouri law; (c) directing the special process server so appointed to file a verified return of service with the Clerk of this Court upon completion in accordance with Missouri Supreme Court Rule 54.20; and (d) granting such further relief as the Court deems just and proper.

Respectfully submitted,

William Wilson, Plaintiff pro se
P.O. Box 227
Farmington, Missouri 63640
(573) 315-5902
Wilwilson1217@outlook.com

Sarah Wilson, Plaintiff pro se
P.O. Box 227
Farmington, Missouri 63640
(573) 315-5902
Wilwilson1217@outlook.com

*Motion to Appoint Special Process Server — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, as of the date of filing of this Motion, Defendant Better Mortgage Corporation has not entered an appearance in this action through counsel, and no attorney has filed an entry of appearance on Defendant's behalf. Accordingly, no service of this Motion upon opposing counsel is required at this time. A copy of this Motion, together with the Order entered hereon, will be included in the packet of documents to be served upon Defendant through its registered agent.

William Wilson
_____
William Wilson

**IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI**
**TWENTY-FOURTH JUDICIAL CIRCUIT**

WILLIAM WILSON and                )
SARAH WILSON,                     )     Case No. 26SF-CC00101
P.O. Box 227                      )
Farmington, Missouri 63640        )     Division: _____
                                  )
      Plaintiffs,          )
                                  )
v.                                )
                                  )
BETTER MORTGAGE CORPORATION,      )
                                  )
      Defendant.           )

> **FILED**
> 05/26/2026
> _____
> Kristina Bone
> CLERK, CIRCUIT COURT
> ST FRANCOIS COUNTY

## ORDER APPOINTING SPECIAL PROCESS SERVER

This matter having come before the Court on Plaintiffs' Motion for Appointment of Special Process Server, and the Court being fully advised in the premises, finds that good cause exists to grant the relief requested.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that:

1. Pursuant to Missouri Supreme Court Rule 54.13(a) and Section 506.140 of the Revised Statutes of Missouri, Robert Pedroli, III, of Process Server St. Louis (also known as Eastern Missouri Legal Services), 130 South Bemiston Avenue, Suite 300, Clayton, Missouri 63105, is appointed as Special Process Server in this action for the limited purpose of serving the Summons, the First Amended Petition for Damages and Jury Demand Directed to Defendant upon Defendant Better Mortgage Corporation through its Missouri registered agent, C T Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275.

2. In the alternative, and only in the event that Robert Pedroli, III is unavailable to effect service, service is authorized by any employee, agent, or independent contractor of Process Server St. Louis (also known as Eastern Missouri Legal Services) who is over the age of

*Order Appointing Special Process Server — Wilson v. Better Mortgage Corp. — No. 26SF-CC00101*

eighteen (18) years, is not a party to this action, and is not otherwise disqualified under Missouri law.

3. The appointment of the Special Process Server herein is made at the risk and expense of the requesting parties, Plaintiffs William Wilson and Sarah Wilson, pursuant to Section 506.140.1 of the Revised Statutes of Missouri.

4. This appointment as Special Process Server does not authorize the Special Process Server to carry a concealed weapon in the performance of his or her duties hereunder.

5. Upon completion of service, the Special Process Server shall promptly file a verified return of service with the Clerk of this Court in accordance with Missouri Supreme Court Rule 54.20.

6. This appointment is valid only for service of the process specifically identified in paragraph 1 of this Order, and shall expire upon completion of such service or upon further order of this Court.

SO ORDERED.


DATED: _____05/26/2026_____


___/s/ Kristina Bone By: Amber Ashley_____
~~JUDGE OF THE CIRCUIT COURT~~   Clerk
ST. FRANCOIS COUNTY, MISSOURI
TWENTY-FOURTH JUDICIAL CIRCUIT

Page 2 of 2

### IN THE CIRCUIT COURT OF ST. FRANCOIS COUNTY, MISSOURI
### TWENTY-FOURTH JUDICIAL CIRCUIT

WILLIAM WILSON,                          )
SARAH WILSON,                            )
                                         )        Case No.: 26SF-CC00101
      Plaintiffs       )
                                         )
v.                                       )
                                         )
                                         )     ┌─────────────────────────┐
BETTER MORTGAGE CORPORATION              )     │        **FILED**        │
                                         )     │       06/03/2026        │
      Defendant.       )     │       Kristina Bone     │
                                         )     │  CLERK, CIRCUIT COURT   │
                                         )     │   ST. FRANCOIS COUNTY   │
                                               └─────────────────────────┘

### NOTICE AND ACKNOWLEDGEMENT
### OF RECEIPT OF SUMMONS AND AMENDED PETITION NOTICE

TO: BETTER MORTGAGE CORPORATION

The enclosed summons and amended petition are served pursuant to Missouri Supreme Court Rule 54.16.

You may sign and date the acknowledgment part of this form and return one copy of the completed form to the sender within thirty days of June 2, 2026.

If you are served on behalf of a corporation, unincorporated association, including a partnership, or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return the form to the sender within thirty days, you or the party on whose behalf you are being served may be required to pay any expenses incurred in serving a summons and petition in any other manner permitted by law.

If you do complete and return this form, you or the party on whose behalf you are being served must answer the petition within thirty days. If you fail to do so, judgment by default will be taken against you for the relief demanded in the petition.

I declare, under penalty of filing a false affidavit, that this Notice and Acknowledgment of Receipt of Summons and Petition was e-mailed to counsel for Better Mortgage Corporation on June 2, 2026.

_____
Signature

1

## ACKNOWLEDGEMENT OF RECEIPT OF SUMMONS AND PETITION

_____
Signature

Attorney for Better Mortgage Corporation
_____
Relationship to Entity/Authority to Receive Service of Process

June 2, 2026
_____
Date

2

Case: 4:26-cv-00885-MAL    Doc. #: 1-1    Filed: 06/08/26    Page: 90 of 94 PageID #: 95

 Re: Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed OrderWilliam Wilson to SFRCivil.eMail@courts.mo.gov 06/02/2026 08:33 PM

1 Attachment



Return of service on amended complaint wilson v better.pdf

Dear Clerk,

Please disregard my prior email on recalling the summons. I have attached the special process servers return on the summons. Both acknowledgement and servers return can be filed in the case.

Thank you.

Respectfully,
William Wilson

---

**From:** William Wilson <wilwilson1217@outlook.com>
**Sent:** Tuesday, June 2, 2026 12:37 PM
**To:** SFRCivil.eMail@courts.mo.gov <SFRCivil.eMail@courts.mo.gov>
**Subject:** Re: Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed Order

Dear Clerk:

Plaintiffs William and Sarah Wilson, appearing pro se in *Wilson v. Better Mortgage Corporation*, Case No. 26SF-CC00101, respectfully submit the attached Notice and Acknowledgement of Receipt of Summons and Amended Petition, executed today, June 2, 2026, by counsel for Better Mortgage Corporation pursuant to Missouri Supreme Court Rule 54.16.

Because service has now been completed and acknowledged under Rule 54.16, Plaintiffs respectfully request that the Court recall the summons previously issued to Better Mortgage Corporation. No further service by special process server or sheriff is needed, and recalling the outstanding summons will keep the docket clean and avoid duplicate service.

Please file the attached Acknowledgement on the case docket and confirm receipt at your convenience. If anything further is needed from me to effect the recall — a separate motion, proposed order, or short form request — please let me know and I will provide it the same day.

Thank you for your help.

Respectfully,

William D. Wilson

Dear Clerk

**From:** Amber.Ashley@courts.mo.gov <Amber.Ashley@courts.mo.gov> on behalf of SFRCivil.eMail@courts.mo.gov <SFRCivil.eMail@courts.mo.gov>
**Sent:** Tuesday, May 26, 2026 6:30 AM
**To:** William Wilson <wilwilson1217@outlook.com>
**Subject:** Re: Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro Se Filings: First Amended Petition; Motion to Appoint Special Process Server; Proposed Order

(See attached file: Order for Special Process Server.pdf)(See attached file: Summons issued to Better Mortgage Corporation.pdf)

From:    "William Wilson" <wilwilson1217@outlook.com>
To:      "SFRCivil.email@courts.mo.gov" <SFRCivil.email@courts.mo.gov>
Cc:      "rscherer@lippes.com" <rscherer@lippes.com>,
         "hcominsky@lippes.com" <hcominsky@lippes.com>
Date:    05/23/2026 01:18 PM
Subject:        Wilson v. Better Mortgage Corp., Case No. 26SF-CC00101 — Pro
        Se Filings: First Amended Petition; Motion to Appoint Special
        Process Server; Proposed Order

Dear Clerk of the Circuit Court:
I am the Plaintiff in the above-captioned matter, Wilson v. Better Mortgage Corporation, Case No. 26SF-CC00101, currently pending in the Circuit Court of St. Francois County, Missouri. I respectfully request that the Clerk's office file the following three documents attached to this email:
Plaintiffs' First Amended Petition for Damages — filed as of right pursuant to Missouri Supreme Court Rule 55.33(a);
Plaintiffs' Motion to Appoint Special Process Server (seeking appointment of Robert Pedroli III as special process server for service of process upon Defendant Better Mortgage Corporation through its registered agent in Missouri); and
Proposed Order Appointing Special Process Server (tendered for the Court's consideration in connection with the foregoing Motion).
Please file-stamp the First Amended Petition and the Motion, and please submit the Proposed Order to the assigned Judge for entry at the Court's earliest convenience. Once the Order appointing Robert Pedroli III as special process server has been entered, kindly issue summons directed to Defendant Better Mortgage Corporation, c/o its Missouri registered agent C T Corporation System, 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129-4275, so that service may be effected.
If any filing fee or other action is required from me to complete these filings, please advise me at the email address below and I will promptly comply. I would be grateful for a confirmation of receipt and file-stamped copies of the Petition and Motion at your earliest convenience.
Thank you for your assistance.
Respectfully Submitted,
William Wilson
573-315-5902
[attachment "26-0523 - Wilson-v-Better-First-Amended-Petition FILE

Case: 4:26-cv-00885-MAL    Doc. #:  1-1    Filed: 06/08/26    Page: 92 of 94 PageID #: 97

READY.pdf" deleted by Amber Ashley/24/Courts/Judicial] [attachment "26-0523 Wilson-Motion-for-Special-Process-Server File Reday.pdf" deleted by Amber Ashley/24/Courts/Judicial] [attachment "26-0523 Wilson-Proposed-Order-Special-Process-Server File Ready.pdf" deleted by Amber Ashley/24/Courts/Judicial]

# Summons in Civil Case

## IN THE 24TH JUDICIAL CIRCUIT, ST. FRANCOIS COUNTY, MISSOURI

| | |
|---|---|
| Judge or Division:<br>BRICE R SECHREST | **Case Number: 26SF-CC00101** |
| Plaintiff/Petitioner:<br>WILLIAM WILSON<br><br>vs. | Plaintiff's/Petitioner's Attorney/Address |
| Defendant/Respondent:<br> BETTER MORTGAGE<br>CORPORATION | Court Address:<br>1 NORTH WASHINGTON ST<br>FARMINGTON, MO  63640 |
| Nature of Suit:<br>CC Other Tort | |

**FILED**

06/03/2026

Kristina Bone
CLERK, CIRCUIT COURT
ST. FRANCOIS COUNTY

(Date File Stamp for Return)

**The State of Missouri to:**
**Alias:**
**R/A: CT CORPORATION SYSTEM**
**5661 TELEGRAPH RD STE 4B**
**ST. LOUIS, MO  63129**
**Other Addresses:**

**BETTER MORTGAGE CORPORATION**

**1 WORLD TRADE CENTER 80TH FLOOR**
**NEW YORK, NEW YORK 10007**

You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for plaintiff/petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.

**COURT SEAL OF**



**ST. FRANCOIS COUNTY**

| 26-MAY-2026 | /s/ Kristina Bone By: Amber Ashley |
|---|---|
| Date | Clerk |

**Further Information:**

## Officer's or Server's Return

**Note to serving officer**: Service should be returned to the court within 30 days after the date of issue.

I certify that I have served the above Summons by: (check one)

☐ delivering a copy of the summons and petition to the defendant/respondent.

☐ leaving a copy of the summons and petition at the dwelling house or usual place of abode of the

defendant/respondent with _____, a person at least 18 years

of age residing therein.

☒ (for service on a corporation) delivering a copy of the summons and petition to:

___Traci Mc Urlm___ (name) ___Intake Specilist___ (title).

☐ other: _____.

Served at ___CT corp 5661 Telegrph___ (address)

in ___SHlous County___ (County/City of St. Louis), MO, on ___6-2-26___ (date)

at ___11:54 au___ (time).

___Robert Pelln___     _____
Printed Name of Officer or Server        Signature of Officer or Server

**Must be sworn before a notary public if not served by an authorized officer.**

Subscribed and sworn to before me on ___6-2-26___ (date).

*(Seal)*

My commission expires: _____     ___Carr Son___
                              Date                    Notary Public

A copy of the summons and petition must be served on **each** defendant/respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

CAROLYN R GROSSE
Notary Public, Notary Seal
State of Missouri
St. Louis City
Commission # 23418884
My Commission Expires 05-17-2027

SJRC (07-25) SM30 (SMCC) *For Court Use Only:* **Document ID # 26-SMCC-483**
2 of 2 (26SF-CC00101)                    Civil Procedure Form No. 1, SCR 54.01 – 54.05,
                                    54.13, and 54.20; 506.120 – 506.140, and 506.150 RSMo